## ALLER v. ALLER.

1. The statutes concerning evidence (*Rev.*, *p.* 380, § 16,) which permit a defendant to plead and set up fraud in the consideration, and (*Rev.*, *p.* 387, § 52,) to show want of sufficient consideration as a defence to a sealed instrument, establish new rules of evidence, but were not intended to abolish all distinction between simple contracts and specialties.

2. It is not a good defence to a promise in writing, *under seal*, to pay a sum of money, for value received, that it was voluntary.

On rule to show cause why a new trial should not be granted on verdict for the plaintiff in Hunterdon county Circuit Court.

The action was brought on the following instrument, viz.: "One day after date, I promise to pay my daughter, Angeline H. Aller, the sum of three hundred and twelve dollars and sixty-one cents, for value received, with lawful interest from date, without defalcation or discount, as witness my hand and seal this fourth day of September, one thousand eight hundred and seventy-three. $312.61. This note is given in lieu of one-half of the balance due the estate of Mary A. Aller, deceased, for a note given for one thousand dollars to said deceased by me. Peter H. Aller. [L. s.] Witnesses present, John J. Smith, John F. Grandin."

Both subscribing witnesses were examined at the trial, and it appeared that there was a note for $1000, dated May 1st, 1858, given by said Peter H. Aller to Mary Ann Aller, upon which there were endorsements of payments—April 1st, 1863, $50; April 1st, 1866, $46; April 1st, 1867, $278.78.

Mary Ann Aller, the wife, died, and on the day after her burial, Peter H. Aller told his daughter, the plaintiff, to get the note, which he said was among her mother's papers. She brought it, read the note; he said there was more money endorsed on it than he thought; requested the witness John F. Grandin to add up the endorsements and subtract

them from the principal, to divide the balance by two, and draw a note to each of her daughters, Leonora and Angelina, for one-half. After they were drawn by the witness, Peter H. Aller said : "Now here, girls, is a nice present for you," and gave them the notes. Angelina was directed to put the old note back among her mother's papers. Grandin was afterwards appointed administrator of Mary A. Aller, and as such, he says, he destroyed the old note.

The letters of administration; a copy of the original note and endorsements thereon; a deed of release by Peter H. Aller to Leonora Sharp and Angelina H. Aller, in which, for the consideration of one dollar, and of natural love and affection, he released all his right and interest, "by the curtesy," to all the real and personal estate of said Mary A. Aller, deceased, which is dated September 8th, 1873; and the last will and testament of Peter H. Aller, were offered in evidence.

The action was brought by Angelina H. Aller, now Angelina H. McPherson, against Peter H. Aller in his lifetime, and, after his death, continued against his executor, Michael Shurts.

The defendant, Peter H. Aller, was aged and feeble, and the plea was, therefore, filed in his lifetime, by consent, without affidavit.

Argued at June Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For plaintiff, *G. A. Allen* and *J. R. Emery.*

For defendant, *J. T. Bird.*

The verdict was for the plaintiff, and a rule to show cause was allowed at the Circuit.

The opinion of the court was delivered by

SCUDDER, J. Whether the note for $1000 could have been enforced in equity as evidence of an indebtedness by the husband to the wife during her life, is immaterial, for after her death he was entitled, as husband of his deceased wife, to

administer on her estate, and receive any balance due on the note, after deducting legal charges, under the statute of distribution. The daughters could have no legal or equitable claim on this note against their father after their mother's decease. The giving of these two sealed promises in writing to them by their father was therefore a voluntary act on his part. That it was just and meritorious to divide the amount represented by the original note between these only two surviving children of the wife, if it was her separate property, and keep it from going into the general distribution of the husband's estate among his other children, is evident, and such appears to have been his purpose.

The question now is, whether that intention was legally and conclusively manifested, so that it cannot now be resisted.

This depends on the legal construction and effect of the instrument which was given by the father to his daughter.

It has been treated by the counsel of the defendant in his argument, as a promissory note, and the payment was resisted at the trial on the ground that it was a gift. Being a gift *inter vivos*, and without any legal consideration, it was claimed that the action could not be maintained. But the instrument is not a promissory note; having the properties of negotiable paper by the law merchant; nor is it a simple contract, with all the latitude of inquiry into the consideration allowable in such a case; but it is in form and legal construction a deed under seal. It says in the body of the writing "as witness my hand and seal," and a seal is added to the name of Peter H. Aller. It is not therefore an open promise for the payment of money, which is said to be the primary requisite of a bill or promissory note, but it is closed or sealed, whereby it loses its character as a commercial instrument and becomes a specialty governed by the rules affecting common law securities. 1 *Daniell's Neg. Inst.*, §§ 1, 31, 34.

It is not at this time necessary to state the distinction between this writing and corporation bonds and other securities which have been held to have the properties of negotiable paper by commercial usage. This is merely an individual

promise " to pay my daughter, Angeline H. Aller, the sum of
$312.61, for value received," &c. It is not even transferable
in form, and there is no intention shown upon its face to make
it other than it is clearly expressed to be, a sealed promise to
pay money to a certain person or a debt in law under seal.
How then will it be affected by the evidence which was offered
to show that it was a mere voluntary promise, without legal
consideration, or, as it was claimed, a gift unexecuted?

Our statute concerning evidence (*Rev.*, *p.* 380, § 16,) which
enacts that in any action upon an instrument in writing, under
seal, the defendant in such action may plead and set up as a
defence therein fraud in the consideration, is not applicable
for here there is no fraud shown.

But it is said that the act of April 6th, 1875, (*Rev.*, *p.* 387,
§ 52,) opens it 'to the defence of want of sufficient considera-
tion, as if it were a simple contract, and, that being shown,
the contract becomes inoperative.

The statute reads—" that in every action upon a sealed in-
strument, or where a set-off is founded on a sealed instru-
ment, the seal thereof shall be only presumptive evidence of
a sufficient consideration, which may be rebutted, as if such
instrument was not sealed," &c.

Suppose the presumption that the seal carries with it, that
there is a sufficient consideration, is rebutted, and overcome
by evidence showing there was no such consideration, the
question still remains, whether an instrument under seal, with-
out sufficient consideration, is not a good promise, and enforce-
able at law. It is manifest that here the parties intended and
understood that there should be no consideration. The old
man said : " Now here, girls, is a nice present for each of
you," and so it was received by them. The mischief which
the above quoted law was designed to remedy, was that where
the parties intended there should be a consideration, they were
prevented by the common law from showing none, if the con-
tract was under seal. But it would be going too far to say
that the statute was intended to abrogate all voluntary con-

tracts, and to abolish all distinction between specialties and simple contracts.

It will not do to hold that every conveyance of land, or of chattels, is void by showing that no sufficient consideration passed when creditors are not affected. Nor can it be shown by authority that an executory contract, entered into intentionally and deliberately, and attested in solemn form by a seal, cannot be enforced. Both by the civil and the common law, persons were guarded against haste and imprudence in entering into voluntary agreements. The distinction between *"nudum pactum"* and *"pactum vestitum,"* by the civil law, was in the formality of execution and not in the fact that in one case there was a consideration, and in the other none, though the former term, as adopted in the common law, has the signification of a contract without consideration. The latter was enforced without reference to the consideration, because of the formality of its ratification. 1 *Parsons on Cont.* (6th ed.) *427.

The opinion of Justice Wilmot, in *Pillans* v. *Van Mierop*, 3 *Burr.* 1663, is instructive on this point.

The early case of *Sharington* v. *Strotton, Plow.* 308, gives the same cause for the adoption of the sealing and delivery of a deed. It says, among other things, " because words are oftentimes spoken by men unadvisedly and without deliberation, the law has provided that a contract by words shall not bind without consideration. And the reason is, because it is by words which pass from men lightly and inconsiderately, but where the agreement is by deed there is more time for deliberation, &c. So that there is great deliberation used in the making of deeds, for which reason they are received as a *lien* final to the party, and are adjudged to bind the party without examining upon what cause or consideration they were made. And therefore in the case put in 17 *Ed. IV.,* if I by deed promise to give you £20 to make your sale *de novo*, here you shall have an action of debt upon the deed, and the consideration is not examinable, for in the deed there is sufficient consideration, viz., the will of the party that made the

deed." It would seem by this old law, that in case of a deed the saying might be applied, *stat pro ratione voluntas*.

In *Smith on Contracts*, the learned author, after stating the strictness of the rules of law, that there must be a consideration to support a simple contract to guard persons against the consequences of their own imprudence, says: "The law does not absolutely prohibit them from contracting a gratuitous obligation, for they may, if they will, do so by deed."

This subject of the derivation of terms and formalities from the civil law, and of the rule adopted in the common law, is fully described in *Fonb. Eq.* 335, *note a*. The author concludes by saying: "If, however, an agreement be evidenced, by bond or other instrument, under seal, it would certainly be seriously mischievous to allow its consideration to be disputed, the common law not having pointed out any other means by which an agreement can be more solemnly authenticated. Every deed, therefore, in itself imports a consideration, though it be only the will of the maker, and therefore shall never be said to be *nudum pactum*." See, also, 1 *Chitty on Cont.* (11*th* *ed.*) 6 ; *Morly* v. *Boothby*, 3 *Bing*. 107 ; *Rann* v. *Hughes*, 7 *T. R.* 350, *note a*.

These statements of the law have been thus particularly given in the words of others, because the significance of writings under seal, and their importance in our common law system, seem in danger of being overlooked in some of our later legislation. If a party has fully and absolutely expressed his intention in a writing sealed and delivered, with the most solemn sanction known to our law, what should prevent its execution where there is no fraud or illegality? But because deeds have been used to cover fraud and illegality in the consideration, and just defences have been often shut out by the conclusive character of the formality of sealing, we have enacted in our state the two recent statutes above quoted. The one allows fraud in the consideration of instruments under seal to be set up as defence, the other takes away the conclusive evidence of a sufficient consideration heretofore accorded to a sealed writing, and makes it only presumptive

evidence.   This does not reach the case of a voluntary agree-·
ment, where there was no consideration, and none intended by
the parties.   The statute establishes a new rule of evidence,
by which the consideration of sealed instruments may be
shown, but does not take from them the effect of establishing
a contract expressing the intention of the parties, made with
the most solemn authentication, which is not shown to be·
fraudulent or illegal.   It could not have been in the mind of
the legislature to make it impossible for parties to enter into·
such promises; and without a clear expression of the legisla-
tive will, not only as to the admissibility, but the effect of
such evidence, such construction should not be given to this
law.   Even if it should be held that a consideration is re-
quired to uphold a deed, yet it might still be implied where·
its purpose is not within the mischief which the statute was
intended to remedy.   It was certainly not the intention of the
legislature to abolish all distinction between simple contracts·
and specialties, for in the last clause of the section they say
that all instruments executed with a scroll, or other device·
by way of scroll, shall be deemed sealed instruments.   It is
evident that they were to be continued with their former legal
effect, except so far as they might be controlled by evidence·
affecting their intended consideration.

If the statute be anything more than a change of the rules
of evidence which existed at the time the contract was made,.
and in effect makes a valuable consideration necessary, where·
such requisite to its validity did not exist at that time, then
the law would be void in this case, because it would impair·
the obligation of a prior contract.   This cannot be done.   *Cooley
on Const. Lim.* 288, *and notes.*

The rule for a new trial should be discharged.