THE TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK v. THE NATIONAL STATE BANK OF NEWARK.

1. It is not a good plea to a promise in writing executed *under seal* prior to the act of April 6th, 1875 (*Rev.*, p. 387), that it was voluntary.

2. A defendant who has stipulated under seal to pay a certain sum annually to the plaintiff so long as the latter would refrain from erecting on its land buildings that might obstruct the defendant's windows, is not relieved from the obligation to continue the payments by giving notice to the plaintiff to that effect, where such a provision formed no part of the agreement between the parties.

3. A national bank, empowered by its charter to provide the real estate necessary for its immediate accommodation in the transaction of its business, cannot interpose the defence of *ultra vires* to a contract made by it to secure the free entrance of light and air into its banking-house.

4. Where the term of existence of a national banking association that would otherwise have expired in 1885, was, by act of congress prior to that time, extended for a further period of twenty years, the identity of the original corporation is in nowise affected.

On demurrer to pleas.

Argued at November Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the demurrant, *McCarter, Williamson & McCarter.*

For the defendant, *George W. Hubbell.*

The opinion of the court was delivered by

GARRISON, J. Plaintiff was the owner of a vacant city lot. The defendant owned the lot adjoining it on the north and occupied it with its banking building, in the south wall

of which were thirty-five windows overlooking the plaintiff's land.  Defendant thereupon executed the following writing:

"Know all men by these presents, that we, the National State Bank of Newark, in the State of New Jersey, in con-sideration of one dollar to us paid by the trustees of the First Presbyterian Church of Newark, in said state, the receipt whereof we do hereby acknowledge, do hereby covenant and agree with them, that so long as they shall refrain from extending their present lecture-room building westward more than eight feet, and from erecting any building on their lot adjoining our banking building, known as the State bank, and from obstructing in anywise the light on the south of our said banking building, except the said eight feet, we will pay to them or their successors the yearly sum of seven hun-dred dollars, in equal quarter-yearly payments, commencing on the first day of July next, and after that rate for any por-tion of a year.

"In witness wereof we have hereto set our corporate seal and caused these presents to be signed by our president this twelfth day of June, eighteen hundred and seventy-two.

"WM. B. MOTT,
"*President.*

"Signed, sealed and delivered in the presence of
"ISAAC GASTON."

Since the delivery of this writing the plaintiff has refrained from obstructing the defendant's windows, and defendant has paid to plaintiff the stipulated sum for each year down to September 1st, 1891, when the defendant gave notice in writing, to the plaintiff, that after January 1st, 1892, all payments under the said arrangement would cease.  When the defendant was one year in arrears this action was brought.

Upon this state of facts, the question is whether the plaint-iff has earned the yearly payment, commencing January 1st, 1892, the lot during that year having been left unoccupied as theretofore.

, The defendant contends that the money is not due for the following reasons, which are stated in as many special pleas:

*First.* Because there was no consideration for the defendant's promise to pay.

*Second.* Because the notice of September, 1891, discontinued the obligation to pay.

*Third.* Because it was *ultra vires* for the defendant to enter into the undertaking to pay.

*Fourth.* Because the defendant's liability ceased with its corporate term of life, to wit, August 1st, 1885, and did not survive with the extension of its charter by the act of July, 1882.

To each of these pleas a demurrer is filed by the plaintiff.

The first plea alleges the lack of any consideration for the contract sued on. The contract to which this defence is set up was a promise under seal, executed prior to the statute of April 6th, 1875. *Rev., p.* 387.

In 1872, when this writing was delivered, a sealed promise was obligatory, even if gratuitous, so that, as a plea to the action, matters made competent by the act of 1875 are no answer to the right of the plaintiff to maintain its suit.

This statute of 1875, in so far as it may constitutionally apply to an instrument sealed prior to its passage, was properly expounded in the case of *Aller* v. *Aller,* 11 *Vroom* 446. Upon demurrer, an obligation executed with a seal prior to the passage of the statute must be judged by the common law in force at the time, and cannot be impaired by a statute of this state subsequently passed. This being so, it is not my purpose to be led into the contention so extensively argued in the briefs of counsel as to whether there was, in point of law, a valid consideration for the promise declared on. I may say, however, that the consideration appears to me to be both obvious and efficient. The plaintiff had the legal right to enjoy the possession of its land in a manner that would obstruct the defendant's windows. The inducement that the defendant offered to the plaintiff not to so use its land acted as a motive to secure to the defendant the benefit it sought to

obtain, and to this extent tended to influence the plaintiff to refrain from the full enjoyment of its property. Whatever benefit this inducement might have in their direction was the consideration for which the defendant stipulated, and, in point of fact, it proved efficient in securing all that defendant bargained for. The bargain, reduced to its simplest expression, was that the defendant would pay a certain sum if the plaintiff would therefor deprive itself of a certain use of its land and permit it to remain in that condition that was beneficial solely to the defendant. It appears to me that every element of a valuable consideration was here present as an efficient motive to the minds of the contracting parties.

The next plea is that the defendant, by giving notice that it would cease the payments it had promised to make, had relieved itself of the obligation to make them.

I do not see how this can be so. No such provision is contained in the contract. If the arrangement was one the parties might lawfully make, it cannot be set at naught in a mode contrary to its terms. Whereas, if it was unlawful, no notice is required to enable the defendant to set up the illegality of the contract. In any event, therefore, the notice is without legal force or significance. Moreover, there are facts sufficiently pleaded in this case to indicate that such a departure from the terms of the contract is without any meritorious support. The benefit for which the defendant stipulated was obviously of great importance to it and involved not merely a continuing forbearance on the part of the plaintiff, but was such as might well induce a practical readjustment of not only the temporary uses to which the plaintiff could put its land, but also of the permanent purposes to which the lot should be applied by its owner. If, for instance, the church, in reliance upon the express promise of the defendant, refrained from building its lecture-room on this lot and expended its means in providing such a room elsewhere on its property, it is evident that if the defendant could thereupon cancel its obligation it would have secured all that it sought by this contract without being compelled to live up to its terms.

The contract may or may not have been a wise one for the bank to make, but the illustration I have given shows that, having made it, every consideration points to its enforcement in favor of the party who, in reliance upon it, has at all times been in the full execution of it.

The remaining pleas are that the defendant corporation (a national bank) was without power to make the contract in question.

*First.* Because the act of congress does not authorize the making of such a promise.

*Second.* Because the period for which the defendant was first organized had expired since the execution of the contract and its corporate existence been further extended for twenty years by an act passed prior to the period of expiration passed by its charter.

These pleas are each vicious. The first because the pleader admits that the defendant was empowered to provide the real estate " necessary for its immediate accommodation in the transaction of its business." This language would surely include a contract made with the object of securing the free entrance of light into the windows of the defendant's banking-house.

The second is likewise bad, because by the extension of its term of being, the legal identity of the defendant corporation remained unchanged. It was not a new life that it received, it was simply the power to continue the old life beyond the period first fixed for its expiration.

It is entirely settled that these acts of succession do not have the effect of canceling the continuing obligations of the corporation, nor can they be pleaded in repudiation of any outstanding liability whatsoever. *National Exchange Bank* v. *Gay,* 57 *Conn.* 224; *People* v. *Backus,* 117 *N. Y.* 196; *City National Bank* v. *Phelps,* 97 *Id.* 44.

I am, moreover, strongly inclined to the opinion that these defences of *ultra vires* are not open to the defendant after so many years of acceptance and acquiescence. *May's Landing Railroad Co.* v. *Camden and Atlantic Railroad Co.,* 19 *Vroom*

530; *St. Louis, Virginia and Terre Haute Railway Co.* v. *Terre Haute and Indianapolis Railway Co.,* 145 *U. S.* 393.

The pleas are, however, each bad in its own way upon the other grounds stated, and the judgment upon demurrer should. be for the plaintiff, with costs.