PHILIP MARVEL

*v.*

WILLIAM E. JONAH.

[Heard March 7th, 1913.  Determined April 10th, 1913.]

A covenant in copartnership articles of agreement between physicians for the general practice of medicine at Atlantic City, whereby the covenantor agrees that if he "shall fail faithfully to perform the covenants of this agreement" the covenantee may terminate the partnership, and in such event, the covenantor will not pursue his profession in said city during three years from the termination of the partnership, will not be enforced by injunction, it appearing that the moving and fundamental cause for such relief is the covenantor's failure to render his accounts to the bookkeeper of the firm in the manner specified in the agreement, and that this fault was unaccompanied by pecuniary loss or improper motives and arose chiefly by reason of absorbing devotion to another and more important department of the covenantor's partnership duties, and that the granting of such relief is oppressive and contrary to the real justice of the case.

---

Final hearing on bill for accounting, dissolution of partnership and injunction.

The present controversy is between two physicians who are partners in business.  Complainant seeks an accounting, a dissolution of the partnership and an injunction restraining defendant from practicing his profession in Atlantic City for a period of three years from the date of the decree of dissolution of the partnership.

Defendant has in his answer fully accounted up to the date of the preparation of the answer, and the accuracy of the accounts is unquestioned.  Defendant in his answer declares that by reason of the strained relations now existing between him and the complainant the partnership should be dissolved; but denies responsibility for these strained relations and denies the right of complainant to an injunction.

The present partnership was formed under a written agreement bearing date January 10th, 1910. By that agreement complainant, defendant and another physician became copartners in the general practice of medicine at Atlantic City for a period of eight years. The agreement is of great length and will not be here quoted in full.

By the agreement complainant, as senior partner, is given the major part of the net income of the business, and the junior partners are subjected to a great number and variety of detailed restrictions relating to their conduct and the business methods to be pursued. Among the provisions relating to business methods are the following:

"It is further agreed that each party to this agreement shall render to the bookkeeper, or the person employed for that purpose, a daily account of the work done or visits made that day by him, together with all moneys paid to him on account of said work done or visits made; and, it is also understood that, in order that the bookkeeper may keep an accurate and intelligent account, this provision for a daily statement must be more or less strictly adhered to."

"Any misappropriation of the receipts, or refusal to account for the work done or moneys received daily, shall be considered a violation of this agreement.

"All professional cards, letter heads, bill heads and other stationery relating to the practice generally, shall be furnished by the said Dr. Philip Marvel, and shall be used exclusively by the parties to this agreement."

At the end of the agreement the following provision is embodied touching the consequences of a violation by the junior partners of any of the covenants of the agreement:

"If at any time during the term of this agreement either the said Dr. Jonah or the said Dr. Durand, parties of the second part, shall fail to faithfully perform the covenants of this agreement, or shall fail to do their work conscientiously and diligently, or shall fail at any time to protect the interests of the parties to this agreement, and the interest and reputation of the said Dr. Philip Marvel, then, and in that event, the said Dr. Philip Marvel shall have the right to cancel and annul this agreement and oust the said party or parties so offending, from this association.

"As a further consideration, moving to Dr. Philip Marvel, and as part of the consideration causing him to enter into this agreement, and in consideration of the apportionment and division of the net income here-

inbefore mentioned, it is further understood and agreed that if at any time during the term of this agreement, either the said Dr. Jonah or the said Dr. Durand, or both, may desire to withdraw from this association, for any reason whatsoever, and shall actually withdraw therefrom, or if at any time during the term of this agreement either the said Dr. Jonah or the said Dr. Durand, or both, may commit a breach or violate any of the covenants of this agreement in such manner as to justify the said Dr. Philip Marvel in requesting the party or parties so offending to withdraw from this association, or to cause the said Dr. Philip Marvel to cancel and annul this agreement, so far as the party or parties so offending are concerned, then in either event such party or parties so voluntarily withdrawing from this association, or ousted from this association, for breach or violation of its covenants, shall not be permitted to practice medicine in the city of Atlantic City, aforesaid, for a period of three years next ensuing such voluntary withdrawal or ouster. And the said Dr. Jonah and the said Dr. Durand doth hereby covenant, promise and agree that in case of either or both of them withdrawing for any reason whatsoever, from this association, during the term of this agreement, or in the event of either or both of them being requested by the said Dr. Philip Marvel to withdraw from this association or being ousted therefrom, on account of a breach of any of the covenants of this agreement, that they, the said Dr. Jonah and the said Dr. Durand will not, either individually or jointly, or as an associate with any other physician, practice medicine or surgery in the City of Atlantic City aforesaid for a period of three years next ensuing such withdrawal or dissolution of this association or ouster of either or both of the parties of the second part."

Complainant now claims that defendant has failed to render accounts to the bookkeeper of the partnership in accordance with the requirements of two of the provisions above quoted and has also violated the covenant third above quoted in using stationery not furnished by complainant. For these alleged violations of the partnership agreement by defendant, complainant by his bill asserts his option named in the penalty clause of the agreement, above quoted, and seeks a decree ousting defendant from the partnership and prohibiting him from pursuing his profession in Atlantic City for the three years period specified in the agreement.

*Messrs. Bourgeois & Coulomb,* for the complainant.

*Mr. Allen B. Endicott* and *Mr. Robert H. McCarter,* for the defendant.

LEAMING, V. C.

Defendant concedes that he has not rendered to the book-keeper reports of his work in accordance with the requirements of the provisions of the partnership agreement. It is not claimed that he did not fully comply with these requirements of the agreement, and also with the office rules prescribed by complainant, so far as what is known as "office practice" is concerned. In prescribing for patients during office hours defendant appears to have promptly supplied to the bookkeeper all necessary data of his work thus performed. But for what is called "outside work" defendant during three prolonged periods failed to promptly supply the bookkeeper with a record of his work. No dishonesty or even dishonest purpose upon the part of defendant is claimed or suggested and no loss of money appears to have been occasioned by defendant's negligence in reporting the details of his work during the periods referred to. But his business methods during the three periods referred to were clearly contrary to the terms of the partnership agreement. Defendant's excuse for his delinquency in the respect referred to is to the effect that he would become so engrossed in his professional work that he would not find time to make up his accounts for the bookkeeper, and once falling behind the task became greater and would not be finally performed until the necessity of settlement required it. The evidence disclosed that defendant made regular reports of his work to the bookkeeper until September 27th, 1910; from that date until the end of that year he failed to make reports of his outside work. At the end of the year he rendered his accounts and a partnership settlement was made and defendant began the new year with a determination to make prompt reports; he succeeded in his efforts until May 6th, 1911, when he again fell behind in his reports until October 31st, 1911, at which time, after a settlement, he went to Europe to restore his health. From January 7th, 1912, until March 16th, 1912, defendant promptly reported his work; from the latter date until the bill was filed (September 7th, 1912) he failed to make reports. His accounts during that period are fully set forth in his answer. Complainant has repeatedly urged defendant to make prompt reports and defendant

has promised to do so, and has, I am convinced, tried to do so. His failure to do so has arisen from the cause already stated, supplemented by the fact that he is temperamentally unable to comprehend the value or necessity of strict business methods or to pursue them.

From the foregoing it will be observed that defendant has clearly violated a covenant of the partnership agreement and that the penalty clause of that agreement in terms bestows upon complainant the right to oust defendant for a failure "to faithfully perform the covenants of this agreement," and also provides that in such case defendant shall not pursue the practice of his profession in Atlantic City for a period of three years.

As the prayer for an accounting and dissolution of the partnership is not resisted, the single question now presented is whether this court should in this case exercise its prohibitory power in behalf of complainant to the end that the covenant of defendant to refrain from the pursuit of his profession in Atlantic City for the period stated may be, in effect, specifically enforced against him.

It is contended in behalf of the defendant that the covenant to refrain from practice is not supported by an adequate consideration. All authorities appear to agree that a valuable consideration must be established to support a covenant of this nature, even though the covenant be under seal; but the weight of authority is clearly to the effect that if a valuable consideration is found to exist the adequacy of that consideration will not be inquired into. The authorities to that effect are collected by Mr. Freeman in his note to *Angier* v. *Weber, 92 Am. Dec. 754.* The adjudicated cases involving covenants of this nature have almost uniformly arisen in connection with the sale of a business, and it has been found impracticable to inquire as to the extent to which the purchase price entered into the covenant of the vendor not to engage in an opposition business. In the present case no sale occurred. The evidence discloses that when the partnership agreement here in question was made defendant was already a partner of complainant. The present agreement continued their partnership relation under new terms and also admitted to the partnership an additional partner. So far as the

evidence discloses it is indeed difficult to discern wherein the new partnership agreement can be said to have been beneficial to defendant, but considered as an engagement involving the partnership relation of the three partners for a future period of time it is, I think, impossible to here determine that the benefits and disadvantages flowing from its mutual covenants were inadequate to support the engagement of defendant to refrain from practice at the place and during the time specified at the termination of the partnership.

What appears to be a more powerful objection to the present enforcement of this covenant of defendant arises from the views expressed by Vice-Chancellor Van Fleet in *Mandeville* v. *Harman, 42 N. J. Eq. (15 Stew.) 185.* It is there pointed out that covenants in restraint of trade are presumptively void, and that it is only by showing that the restraint is good that the presumption will be overcome; to overcome the presumption of invalidity the restraint must be shown to be reasonable, and the test of reasonableness is that it imposes no shackle upon one party that is not beneficial to the other; restraint unlimited as to time can find no justification in reasonableness except upon the theory that it is necessary to protect the good will of a business; there is no good will in the business of a physician, and hence no interest reasonably calling for protection beyond the period during which the physician covenantee pursues his business. His conclusion is that the absence of the element of good will in the business of a physician renders it unreasonable and improper for a physician to exact from an employe a covenant against practice for a period longer than the time the covenantee shall pursue his profession. While the relief sought in that case was a preliminary injunction and was denied because of the uncertainty of the right, the views above briefly summarized are clearly defined as the views of that learned jurist. The test of reasonableness stated in *Mandeville* v. *Harman,* that is, that the restraint imposed upon one party must not be larger than is reasonably necessary for the protection of the other, is a test which has been definitely adopted by our court of last resort, and is not open to question. *Brewer* v. *Marshall, 19 N. J. Eq.*

(*4 C. E. Gr.*) *537, 547; Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq.* (*13 Dick.*) *507.*

The covenant here sought to be enforced is between physicians and fixes three years as an arbitrary period of restraint, irrespective of whether the covenantee lives or abandons his practice during that period. If the views stated in *Mandeville* v. *Harman* to the effect that no good will exists in connection with the business of a physician and that a restraint can be regarded as reasonable only when limited to the needs of the covenantee, the covenant here under consideration would seem to rest upon an improper basis. I should, however, have great hesitancy in determining that a covenant between physicians could be properly classed as void for unreasonableness as to time when limited in time to three years. But I think it here unnecessary to so determine, for I find it impossible to escape the conclusion, under all the circumstances here present, that the remedy which this court is now asked to enforce against defendant is oppressive and contrary to the real justice of this case.

In granting relief by injunction and especially in a case of this nature where the relief sought is in effect the specific performance of a contract, the rules laid down in *Sternberg* v. *O'Brien, 48 N. J. Eq.* (*3 Dick.*) *370, 375,* cannot be too carefully adhered to:

"No matter when the writ is applied for, to warrant its issue, in a case like the one now under consideration, three things must be clearly shown—*first,* that a valid contract has been violated in a material point; *second,* that such violation has resulted, or will result, in a serious injury, and *third,* that the remedy at law is plainly inadequate to do full and complete justice. A court of equity, in exercising its prohibitory power, must always proceed with the utmost caution and see to it that its power is not so exercised as to do more harm than good. The power exists to prevent irreparable wrong, and should not, therefore, be used, in any case, when its use will produce the very result it was designed to prevent. The rule is fundamental that an injunction should never be granted when it will operate oppressively or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all the

circumstances of the case, or when the benefit it will do the complainant is slight in comparison with the injury it will do the defendant. The great office of the writ is to protect and preserve, not to destroy."

The covenant of defendant is that if he "shall fail to faithfully perform the covenants of this agreement" complainant may terminate the partnership and in such event defendant will not pursue his profession in Atlantic City during the specified period. As already stated, the failure of defendant to render to the bookkeeper of the partnership prompt accounts of his work was not by reason of dishonest purposes or acts, but was due to the pressure of his professional work and his failure to appreciate the importance of the strict business methods defined by the partnership agreement. Defendant was, unquestionably, wholly unconscious of the fact that his delinquencies in accounting might be made the basis of a dissolution and the consequences here urged. From the viewpoint of complainant, with his devotion to strict business methods, defendant's failures to account were indeed annoying; but no pecuniary loss resulted. Defendant was, from time to time, urged by complainant to render to the bookkeeper regular reports of his work, and after the personal relations between complainant and defendant had become severely strained a letter from complainant to defendant was not lacking in emphasis, but no specific warning was given that the consequences here sought to be visited on defendant might result from his conduct. If defendant ever understood the terms of his contract—and this is indeed doubtful—I am fully convinced that until the bill was filed he was in ignorance of the provisions here sought to be enforced; his former defaults of the same nature had been overlooked by complainant. It is urged by complainant that the remedy now sought flows by contract from the right of dissolution. That is undoubtedly the language of the contract; but in administering this form of relief a court of equity is required to give consideration to a broader view than the naked terms of the agreement, and it thus becomes impossible to ignore the circumstance that the moving and fundamental cause for the relief here sought is the failure of defendant to render his accounts to the bookkeeper in the

manner specified in the agreement, and that this fault, unaccompanied by pecuniary loss or improper motives and arising chiefly by reason of absorbing devotion to another and more important department of defendant's partnership duties, cannot justly be made the basis of a form of relief in a court of equity which will be fraught with consequences so serious to both defendant and the public as the remedy here urged. In considering this remedy as unjust and unnecessarily oppressive under the circumstances of this case, it must be borne in mind that it is more than doubtful whether the pursuit by defendant of his profession during the period named will result in serious loss to complainant. That patients will probably be treated by defendant who might otherwise seek the services of complainant may be conceded; but complainant's practice is, in magnitude, far beyond his ability to cope with it without the employment of the services of others, while the consequences which will flow from denying to defendant the privilege to pursue his practice in the only field of his acquaintance are of the utmost seriousness. The force of this situation in a case of this nature is stated in *Sternberg* v. *O'Brien, supra* (at *p. 376*), as follows:

"When, therefore, a court is asked either to deprive a person of this right, or to abridge it, it is its duty, before it acts, to consider with the utmost care whether, if it does what it is asked to do, it will not, on a careful comparison of consequences, do more injustice than justice."

It is not to be inferred from what is here said that relief of the nature here sought is not within the field of equity jurisdiction in cases of this general nature; on the contrary such relief is not infrequently granted. Nor is it to be here assumed that such damages as complainant may suffer by defendant's breach of contract are not recoverable in an action at law. The denial of relief by injunction herein is wholly based upon the fact that under all the circumstances of this case the relief sought is unjust and unnecessarily oppressive.

A claim is also made by complainant that defendant has violated that part of the partnership agreement which requires the exclusive use of the stationery furnished by complainant. That claim is based upon the fact that defendant has not uni-

formly used prescription blanks so supplied, but has, at times, used blank paper and at other times prescription blanks supplied by druggists on which is printed only the name of defendant. I have not been able to regard this alleged breach of the agreement as material.

I will advise a decree of dissolution of the partnership, and direct an accounting for such work as has been performed pending the litigation, and deny the prayer for an injunction.