GORDON B. AND ELIZABETH H. TODD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4586–65, 516–67, 2386–67. Filed March 18, 1969.

*Allen H. Gardner*, for the petitioners.
*Leon M. Kerry*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows:

| Docket No.— | Year | Deficiency |
|---|---|---|
| 4586–65 | 1961 | $7, 176. 21 |
| 516–67 | 1962 | 6, 282. 31 |
| 516–67 | 1963 | 7, 514. 22 |
| 2386–67 | 1964 | 9, 694. 54 |

All issues have been settled with the exception of certain interest deductions which petitioners took in each of the years involved for amounts paid purportedly as interest on book credits in petitioners' books standing in the names of members of petitioners' family.

FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

The petitioners in these consolidated cases are husband and wife, residing in Cold Spring, N.Y., when the petitions were filed. They filed a joint income tax return for 1961 with the district director of internal revenue, Manhattan, N.Y., and a joint income tax return for each of the years 1962, 1963, and 1964 with the district director of internal revenue, Albany, N.Y.

Gordon B. Todd, who will be referred to as petitioner, is engaged in carrying on investment activities at 25 Broad Street, New York City, under the name of Gordon B. Todd & Co. He had no license to engage in private banking. He used substantial amounts of borrowed money in his investment activities. The major part of this borrowed capital was obtained through secured loans but about $500,000 was obtained through unsecured loans. These unsecured loan accounts were first obtained early in the operations of Gordon B. Todd & Co., probably in the 1920's. Some of the first unsecured loan accounts were opened when petitioner's mother, sister, and brother lent him money without security. When one of these loans was made, the amount of the loan was credited to what was called an unsecured-loan ledger account on the books of account of Gordon B. Todd & Co. in the name of the lender. At the end of the year 1964 (the last taxable year covered in this consolidated proceeding), the books of account showed credit balances for 22 unsecured-loan ledger accounts, including four accounts standing in the names of members of petitioner's family in a total amount of $566,292.23.

During all of the years in issue and for many years prior to these years the unsecured-loan ledger accounts of Gordon B. Todd & Co. contained credit balances in the names of petitioner's only daughter or a joint account in the names of his daughter and son-in-law and

three accounts in the names of his grandchildren. The names and ages of these parties are Elizabeth T. Dale, born July 31, 1923, child of petitioners and after 1944, the wife of Chalmers Dale, and their three children: Elizabeth, born December 12, 1944; Kathryn, born November 20, 1946; and Gordon T. Dale, born May 2, 1951.

At various times, principally during the late 1950's and during each of the years from 1960 to and including 1963, petitioner caused various amounts, usually in multiples of $3,000, to be credited to the joint account of his daughter and son-in-law and to the accounts of each of his three grandchildren.

An analysis of the account of Chalmers and Elizabeth T. Dale from the year 1957 to and including 1963 shows the following credit entries:

| Date | Amount | Date | Amount |
|---|---|---|---|
| Dec. 12, 1957 | $3,000 | July 31, 1961 | $6,000 |
| Dec. 12, 1957 | 3,000 | Dec. 12, 1961 | 6,000 |
| Apr. 17, 1958 | 3,000 | Jan. 11, 1962 | 12,000 |
| Apr. 17, 1958 | 3,000 | Jan. 2, 1963 | 6,000 |
| Dec. 31, 1959 | 2,800 | Jan. 2, 1963 | 6,000 |
| Jan. 4, 1960 | 6,000 | | |

Subsequent to January 1956 and up to and including 1963, petitioner would make credit entries in each of the ledger accounts of Gordon T. Dale, Elizabeth H. Dale, and Kathryn Dale, as follows:

| Date | Amount | Date | Amount |
|---|---|---|---|
| Dec. 21, 1956 | $3,000 | July 31, 1961 | $3,000 |
| Dec. 3, 1957 | 3,000 | Dec. 12, 1961 | 3,000 |
| Apr. 17, 1958 | 3,000 | Jan. 1, 1962 | 6,000 |
| July 13, 1959 | 3,000 | Jan. 2, 1963 | 3,000 |
| Jan. 4, 1960 | 3,000 | Jan. 2, 1963 | 3,000 |

In 1964 the petitioner drew checks totaling $6,000 to his daughter and checks totaling $6,000 to his son-in-law and checks totaling $6,000 to each grandchild. In return for the checks to his daughter, son-in-law, and grandson (who was then 13), which were deposited in his daughter's personal bank account, petitioner received a check for $18,000 from his daughter. Twelve thousand dollars thereof was recorded as a credit on the ledger account of Chalmers and Elizabeth Dale, and $6,000 thereof was recorded as a credit on the ledger account of his grandson. The checks to his two granddaughters were simply endorsed by the granddaughters and returned to the petitioner who then recorded $6,000 as a credit on each granddaughter's ledger account.

None of the above credit entries in the ledger accounts represented money which had been owned by the daughter, son-in-law, or grandchildren and transferred to or borrowed by the petitioner.

At the end of each year petitioner would charge himself with interest on the average daily balance in each of the four accounts. In the early years the interest was at the rate of 6 percent but in the later years, including all of the years in issue, the rate was 10 percent. Also during the early years no checks were drawn for this computed interest but petitioner would merely credit each account therewith. In later years, including the years in issue, petitioner drew checks for this computed interest to his daughter, son-in-law, and grandchildren.

The following shows the interest petitioner charged himself with on the four accounts:

| Name of account | 1961 | 1962 | 1963 | 1964 |
|---|---|---|---|---|
| Chalmers and Elizabeth T. Dale | $2,817.44 | $3,735.82 | $4,363.66 | $5,112.33 |
| Elizabeth H. Dale (and Daniel B. and Elizabeth D. Lincoln) | 2,813.87 | 3,529.40 | 4,318.59 | 5,157.57 |
| Kathryn Dale | 2,803.40 | 3,495.40 | 4,318.69 | 4,959.82 |
| Gordon T. Dale | 2,799.85 | 3,561.10 | 4,386.68 | 5,396.39 |
| Total | 11,234.56 | 14,321.72 | 17,387.62 | 20,626.11 |

In most instances the checks covering the computed interest would be endorsed and returned to petitioner. Sometimes when they were all delivered to the daughter she would deposit them in her account and draw a check to petitioner in the same total amount. Sometimes not quite all of the amount of the so-called interest checks was returned to petitioner. In 1962 each member of the family retained around $200 and in 1964 one granddaughter retained approximately $650 and the other retained $1,500. Either the amount of the so-called interest checks that were endorsed and returned or the amount that was actually returned was recorded as *additional* credits in the various accounts.

In their income tax returns for the years in issue petitioners took deductions for interest paid on the four accounts as follows:

| Year | Amount |
|---|---|
| 1961 | $11,234.56 |
| 1962 | 14,321.72 |
| 1963 | 17,387.62 |
| 1964 | 20,626.11 |

In his notice of deficiency respondent disallowed the above interest deductions.[1] He explained in his notice for 1964 that the disallowance was on the ground that petitioner "failed to establish that such interest was paid on bona fide indebtedness within the purview of section 163 of the Internal Revenue Code of 1954."

---

[1] There is a slight discrepancy in the notice of less than a dollar between the 1961 and 1964 interest deductions that were disallowed and the interest deductions taken on the four book credits.

OPINION

Section 163(a), I.R.C. 1954, allows as a deduction "all interest paid or accrued within the taxable year on indebtedness." Petitioner had the burden to establish that a debtor-creditor relationship arose between him and his daughter, son-in-law, and three grandchildren.

Petitioner argues the credit entries in his books constituted valid transfers of funds by gift and therefore he paid interest on items of indebtedness he owed to his daughter, her husband, and their three children. There is no merit in his argument. Petitioner seems to feel that his emphatic statements on the witness stand that these credit entries were recognized by him as solemn obligations to pay on demand makes them instant transfers of funds by gift. Such evidence is of no more value than it would be if he put his promises to pay in writing and delivered the writings to the members of his family. The courts have always held that one makes no present gift by the delivery of his personal note when there is no consideration. See *Woodward* v. *United States*, 208 F. 2d 893 (C.A. 8, 1953). In *William Herbert Brown*, 25 T.C. 920 (1956), affd. 241 F. 2d 827 (1957), we held taxpayer's notes to his children did not constitute gifts and taxpayer was not allowed to deduct amounts purportedly paid as interest on said notes.

One of the essential elements of a bona fide gift of money is the irrevocable transfer of all dominion and control over the money to the transferee so that the transferor can exercise no further dominion or control over the funds. *Estate of Robert W. Hite, Sr.*, 49 T.C. 580, 594 (1968). It is obvious that no such transfer of all dominion and control was accomplished here by the credit entries. Such entries did not irrevocably divest petitioner of anything. Petitioner constantly referred to his daughter, son-in-law and grandchildren as his creditors and he seems to feel that the fact that these credit entries in their names were at that place in his ledger where other unsecured loans were recorded, and that they were verified by an accounting firm, somehow helps to make them instruments of transfer. Such evidence is meaningless on the issue of whether a transfer by gift was accomplished. The fact remains that all petitioner ever did was record the name of a member of his immediate family with a sum of money after the name in a book he owned and controlled. Such a writing in his book accomplished nothing by way of gift. And the fact that the book was his business ledger and his use of the language of business with such words as *accounts, credit entries, debit entries,* and *confirmations* in describing what he did is of no importance. The fact remains he did not *give* anything to his daughter, her husband, or her children by the entries in his books.

This case is much like *Lewis C. Christensen*, 40 T.C. 563 (1963). There the taxpayer was in the real estate and investment business. He

caused certain amounts to be credited in his business ledger to religious and charitable organizations in the years 1956, 1957, and 1958. Although he did not pay the organizations anything in the years shown he took charitable and interest deductions (for interest credited on the ledger account) for those years. We upheld the disallowance of all of the deductions and rejected the argument that the credit entries constituted a gift in trust to the religious and charitable organizations at the time they were made in the taxpayer's business ledger. We pointed out there was no abandonment of control over any of his money by the credit entries. We said (p. 577) : "There is no doubt this petitioner retained absolute and unfettered control over all the money in his personal checking accounts" and we went on to hold (p. 578) "there was no enforceable obligation" created by the credit entries such as is required to sustain the deduction for a payment of interest thereon. See also *Paul M. Nehring*, 45 B.T.A. 1111 (1941), affd. 131 F. 2d 790 (1942) ; *Ludwig Bendix*, 14 T.C. 681 (1950).

The above rules fully apply with regard to the year 1964 when the petitioners gave checks to their daughter, son-in-law and grandchildren which were in effect immediately returned to petitioner and the usual credit entry made. Petitioner makes no separate argument with respect to the year 1964. He does not contend this year when checks were issued and returned should be treated any different than the prior years when no checks were issued. Because of the family connections, the transactions are subject to rigid scrutiny. *William Francis Mercil*, 24 T.C. 1150 (1955) ; *William Herbert Brown, supra*. Petitioner testified he only used the check method in 1964 because the internal revenue agent had questioned his system of setting up credits and debits. It fairly appears from his testimony that he did not consider the 1964 credit entries any different than the entries for prior years when no checks were issued. It is rather obvious that petitioner suffered no more loss of dominion or control of the subject matter of the alleged gifts in 1964 than he did in prior years.

We hold the credit entries in the four accounts did not constitute "indebtedness" within section 163 (a), I.R.C. of 1954, and consequently the amounts purportedly paid as interest on the average daily balances is not deductible. None of the cases petitioner cites are remotely in point.[2]

---

[2] Petitoner suggests on brief that the dearth of "all-fours precedent" might be due to respondent's prior acceptance of such book credits as bona fide debts. He points to his many years of interest deductions on such book credits without challenge by respondent. But petitioner's returns for prior years did not show that a portion of the interest deducted was allegedly paid to members of his family. It was not until the 1962 return when petitioner was compelled by the mandate of sec. 6049, I.R.C. 1954, and sec. 1.6049–1, Income Tax Regs., to list the recipients of his interest payments that respondent was alerted by his income tax returns to the fact that a substantial portion of the interest deduction was for amounts purportedly paid to members of his own family as interest.

Petitioner advances one other argument in support of his interest deduction. He contends on brief that: "The credit balances constituted indebtedness under the contract principle of an account stated." The argument is without substance. None of the characteristics of an account stated are present here. The principle of an account stated starts with prior transactions that create debtor-creditor relationships. Here, as we have held, the prior transactions did not create any indebtedness.

Petitioner argues that he is entitled to at least a portion of the interest deduction taken. He contends that a portion of each of the credit balances consists of money originating with the members of the family or it is interest received, cashed, and paid back into the accounts. He argues on brief that he is entitled to deduct interest at 10 percent on what he calls the "undetermined part of each credit balance [that] was composed of the creditor's deposit of his own money in his account."

There is some oral testimony that some of Chalmers' and Elizabeth's money was placed in their account in the war years but there were withdrawals and the documentary evidence of the account showed a balance of less than $400 in 1957. Earlier records were stored in petitioner's barn and were destroyed when the barn burned down in 1966 or 1967. There was also some testimony that Gordon's credit balance might have included deposits of his own money of $24 in 1959 and $2 in 1960 (when he was 8 or 9 years old). There was also some testimony by petitioner that the account of petitioner's oldest granddaughter, Elizabeth, might have included a $75 paycheck for work performed by her for her grandfather in some year prior to the years in issue. It would be impossible to determine from this record that any part of the credit balances standing in the names of members of his family during the years in issue was composed of their own money.

The same is true with respect to the claim that part of the credit balances consisted of interest paid to the members of the family and paid back by them into the accounts. Since, as we have held, the entries by petitioner in the credit balances which he contends were gifts were not completed gifts, the interest that would actually be paid thereon could at most result in a transfer of funds in the nature of a gift and not in any event a payment of interest. If the so-called interest payment was paid to the family member with no strings attached such as a family understanding that it would be returned to the account there would be a completed transfer of the payment. If such unfettered funds, paid as interest, were voluntarily paid back to petitioner for credit in the account it might well be that some interest subsequently paid on this portion would be deductible. But the state of this record is such that there could be no finding that any specific portion of the

credit balances during the years in issue was made up of the voluntary return of funds received as interest payments. Only two of the recipients of these so-called interest payments testified, petitioner's daughter and her husband, and their testimony was not specifically directed to the interest payments that were returned.

In both the early years when credit entries were made for alleged interest without any attempt to pay the same, and in the later years when all or a large portion of the so-called interest payments were consistently returned to petitioner, who credited the respective ledger accounts for the amounts thereof, the petitioner never parted with complete control or dominion over all of the funds representing the alleged interest payments. This record would not support a finding that the so-called interest payments made by petitioner to members of his family and almost always entirely returned to him constituted completed transfers of funds to the members of his family. If no part of the interest payments were once the subject of a completed transfer they merely increased the book entry credits which we have held accomplished no debtor-creditor relationship.

By his argument that the part of the credit balances that consisted of prior interest payments and the family members' own money is some "undetermined" amount petitioner is actually admitting that he has not carried his burden. Because these were family transactions petitioner had the burden to clearly establish that the credit balances of his daughter, her husband, and their children were composed of their own money during all of the years involved herein. Petitioner has not sustained his burden and we hold the entire interest deductions taken on the book credits standing in the names of the members of petitioner's family during the years involved were correctly disallowed.

We hold for respondent on the issue presented.

*Decisions will be entered under Rule 50.*