JOSEPH LINDER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 294–75.  Filed August 30, 1977.

Joseph Linder, pro se.
*Marwin A. Batt,* for the respondent.

HALL, *Judge:* Respondent determined the following deficiencies in petitioner's income tax:

| Year | Deficiency |
|------|-----------|
| 1971 | $1,792.50 |
| 1972 | 1,433.20 |

Another issue having been disposed of by mutual agreement, the remaining issue for decision is whether petitioner is entitled to interest deductions under section 163[1] for certain payments made to his sister.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Joseph Linder resided in Bayonne, N.J., at the time he filed his petition.

Petitioner was an actuary, employed on a consulting basis by various insurance companies. In November 1950 petitioner purchased a lot in Bayonne and had a house constructed on it. Petitioner's two sisters, Rose Linder and Tillie Linder, shared this house with him.

In 1951 petitioner wished to make a substantial gift to his sister Rose but lacked sufficient liquid assets to make a gift in cash or securities. Instead, on September 15, 1951, he gave her what he termed a bond, payable in 20 years, in the face amount of $34,000, which in essence embodied petitioner's purported obligation to make Rose a gift of this amount. To secure this bond, he gave Rose what he termed a mortgage on his Bayonne residence. The mortgage documents indicated that petitioner would pay Rose annual interest of 5 percent on the bond. The mortgage was recorded in Hudson County, N.J. Rose transferred nothing of value to petitioner for the bond given to her on September 15, 1951.

At various times thereafter petitioner gave Rose additional bonds of $3,000, securing each bond by an additional

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

mortgage. Each additional bond bore the same interest rate and expiration date as the original bond. All of the bonds petitioner gave Rose were signed by him, were payable in a sum certain, and were executed under seal. Each additional mortgage was filed in Hudson County, N.J. Rose transferred nothing of value to petitioner for these additional gifts.

As of May 15, 1971, the total face value of the bonds and securing mortgages executed by petitioner and held by Rose totaled $46,000. On that date petitioner decided to consolidate these bonds and mortgages and also decided to increase his overall gift to Rose to $49,000. Therefore Rose canceled his prior bonds and mortgages, and petitioner signed and executed under seal a new bond to Rose, in the face amount of $49,000, payable on May 15, 1981, with annual interest of 7 percent. He also executed a new mortgage of $49,000 on his Bayonne residence and had it recorded. In 1972 petitioner signed and executed under seal an additional bond for $3,000 to Rose, payable on May 15, 1981. He also executed an additional mortgage in the same amount. Both the 1971 and 1972 bonds were payable to Rose Linder or her assigns.

The 1971 bond reads as follows (the 1972 bond was identical, except for the amount of money involved):[2]

Know all Men by these Presents, That JOSEPH LINDER, of the City of Bayonne in the County of Hudson and State of New Jersey held and firmly bound unto ROSE LINDER the City of Bayonne in the County of Hudson and State of New Jersey in the penal sum of Forty-Nine Thousand ($49,000.00) Dollars lawful money of the United States of America, to be paid to the said ROSE LINDER, HER EXECUTORS, ADMINISTRATORS OR assigns: for which payment well and truly to be made, JOSEPH LINDER bind himself, his heirs, executors and administrators, firmly by these presents. Sealed with his seal the 15th day of May One Thousand Nine Hundred and seventy-one.

The Condition of the above obligation is such that if the above bounden JOSEPH LINDER HIS heirs, executors or administrators, shall well and truly pay, or cause to be paid unto the above named ROSE LINDER, HER executors, administrators or assigns, the just and full sum of Forty-Nine Thousand ($49,000.00) Dollars on the fifteenth day of May which will be in the year One Thousand Nine Hundred and eighty-one, and the interest thereon, to be computed from May 15, 1971 at and after the rate of seven per cent. per annum, and to be paid annually, in advance. Without any fraud or other delay, then the above Obligation to be Void, otherwise to remain in full force and virtue.

---

[2] The nontypeset portions of the bond have been underlined.

\* \* \*

And it is hereby expressly agreed, that should any default be made in the payment of the said interest, or of any part thereof, on any day whereon the same is made payable as above expressed, or should any tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien be hereafter imposed or acquired upon the premises described in the mortgage accompanying this bond, and become due and payable; and should the said interest remain unpaid and in arrear for the space of 120 days, or said tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien, or any or either of them, remain unpaid and in arrear for the space of 120 or should any default be made in the performance of any of the terms, covenants and conditions contained in the Mortgage accompanying this Bond (the said terms, covenants and conditions and all matters and things contained in said Mortgage being hereby made a part hereof as though set forth at length herein) then and from thenceforth, that is to say, after the lapse or expiration of either of the said periods, as the case may be, the aforesaid principal sum of Forty-Nine Thousand dollars ($49,000.00) with all arrearage of interest thereon, shall, at the option of the said ROSE LINDER, OR legal representatives or assigns, become and be due and payable immediately thereafter, although the period first above limited for the payment thereof may not then have expired, anything hereinbefore contained to the contrary thereof in any wise notwithstanding, and the said Obligee may at option, pay such tax, assessment, or water rent in arrear, and the amount so paid shall be added to and become part of the principal sum secured by the said mortgage and by this Bond, and shall be payable on demand with interest to six per centum per annum.

In 1974 petitioner paid Rose $52,000 and canceled the outstanding bonds and mortgages. Prior to 1974 petitioner had not made any payments to reduce the principal of his bond and mortgage obligations. On August 1, 1974, Rose purchased an annuity contract from an insurance company, paying a single premium of $55,000.

Title to the Bayonne residence at all times remained in petitioner's hands. Petitioner also paid all real estate taxes on the house. The responsibility for day-to-day operation of the house rested with Rose, who used her own income as well as petitioner's interest payments to pay for groceries, cleaning, and other household expenses.

In 1971 petitioner made interest payments totaling $3,430 to Rose on the $49,000 bond then outstanding and deducted this amount on his 1971 tax return as interest on a home mortgage. In 1972 he paid Rose $3,640 as interest on the $52,000 of bonds then outstanding and similarly deducted this

amount on his return. Respondent disallowed these deductions in their entirety.

OPINION

Over a period of 20 years petitioner made successive promises to his sister Rose to make sizable gifts to her. His promises for the years in issue were memorialized in bonds, executed under seal, secured by mortgages on his home. The issue before us is whether petitioner is entitled to deduct the interest which he paid to his sister on these bonds.

A deduction is generally allowed on "all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Courts have defined indebtedness to mean an unconditional and legally enforceable obligation for the payment of money. *Autenreith v. Commissioner*, 115 F.2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940). The determination of whether an obligation is legally enforceable requires an analysis of the law of the State in which the transaction occurred, in this case New Jersey.[3] *Morton v. Commissioner*, 38 B.T.A. 1270, 1273 (1938), affd. 112 F.2d 320 (7th Cir. 1940); *Park v. Commissioner*, 38 B.T.A. 1118, 1119 (1938), affd. 113 F.2d 352 (3d Cir. 1940).

Since in most jurisdictions[4] a promissory obligation executed as a gift is not legally enforceable, any interest paid on such an obligation is not deductible. *Brown v. Commissioner*, 241 F.2d 827 (8th Cir. 1957) (Missouri law), affg. 25 T.C. 920 (1956); *Woodward v. United States*, 208 F.2d 893, 898 (8th Cir.

---

[3] Respondent argues that the entire transaction is without substance, relying on *Weller v. Commissioner*, 270 F.2d 294 (3d Cir. 1959), affg. 31 T.C. 33 (1958), cert. denied 364 U.S. 908 (1960). We disagree with respondent's factual contention, and therefore decide this case by determining the effect of State law on the obligations in issue.

[4] Two older Federal cases found that under the applicable State law a note made under seal, even though executed as a gift, was legally enforceable. *Preston v. Commissioner*, 132 F.2d 763 (2d Cir. 1942) (New York law), revg. 44 B.T.A. 973 (1941); *Commissioner v. Park*, 113 F.2d 352 (3d Cir. 1940) (Pennsylvania law), affg. 38 B.T.A. 1118 (1938). In the intervening years, the holding in the *Preston* case has been displaced by a modification of New York law. N.Y. Gen. Constr. Law sec. 44a (McKinney Supp. 1977). At the present time in New York, the seal, except as otherwise expressly provided by statute, is without legal effect. In Pennsylvania the common law seal has been modified and practically abolished. See Williston, Contracts, sec. 219A (3d ed. 1957), and Pennsylvania Bar Association notes to Pa. Stat. Ann. tit. 12A, sec. 3–408 (Purdon 1970).

1953) (Iowa law); *French v. Commissioner*, 138 F.2d 254, 258 (8th Cir. 1943) (Iowa law), affg. a Memorandum Opinion of this Court; *Gilman v. Commissioner*, 53 F.2d 47 (8th Cir. 1931) (Iowa law), affg. 18 B.T.A. 1277 (1930); *Day v. Commissioner*, 42 B.T.A. 109, 111–112 (1940) (Connecticut law), affd. 121 F.2d 856 (2d Cir. 1941); *Sellers v. Commissioner*, 22 T.C.M. 1327, 32 P-H Memo. T.C. par. 63,263 (1963) (Virginia law).[5]

In New Jersey, as under the common law generally, a gratuitous promise to make a gift cannot normally be enforced. *Jones v. Westcott*, 8 N.J. Misc. 312, 150 A. 50 (Sup. Ct. 1930); *Cockrell v. McKenna*, 103 N.J.L. 166, 134 A. 687 (Ct. Err. & App. 1926). At common law, however, such a promise, if under seal, is enforceable. E.g., *Aller v. Aller*, 40 N.J.L. 446 (Sup. Ct. 1878); *Trustees First Presbyterian Church v. National State Bank*, 57 N.J.L. 27, 29 A. 320 (Sup. Ct. 1894), affd. 58 N.J.L. 406, 36 A. 1129 (Ct. Err. & App. 1895). Since the gratuitous promises involved in this case were under seal, the sole issue is whether or not New Jersey retains this common law rule.

The following statutory rule applies in New Jersey:

*In any claim upon a sealed instrument, a party may plead and set up, in defense thereto,* fraud in the consideration of the contract upon which recovery is sought, or *want or failure of consideration, as if the instrument were not sealed.* In such cases the seal shall be only presumptive evidence of sufficient consideration, which presumption may be rebutted as if the instrument were not sealed. [N.J. Stat. Ann. sec. 2A:82–3 (1976). Emphasis added.]

On its face, this statute, enacted in substantially its present form in 1900 (1900 N.J. Laws, ch. 150, sec. 15), appears to modify the common law rule and to make lack of consideration a defense to a sealed instrument. This would scarcely be surprising, for the magic of the seal has long since been legislatively exorcised in most American jurisdictions. See Williston, Contracts, secs. 218, 219A (3d ed. 1957). The interpretation we place upon the statute seems even more clear in view of the following history. The predecessor of the

---

[5] Other cases have employed similar reasoning without explicitly relying on State law. *Johnson v. Commissioner*, 86 F.2d 710 (2d Cir. 1936), affg. 33 B.T.A. 1003 (1936); *Todd v. Commissioner*, 51 T.C. 987, 991 (1969), affd. per curiam 422 F.2d 1332 (2d Cir. 1970); *Sand Springs Railway Co. v. Commissioner*, 21 B.T.A. 1291, 1310–1311 (1931); *Benson v. Commissioner*, 9 B.T.A. 279 (1927).

statute, enacted on April 6, 1875 (1875 N.J. Laws, ch. 320), provided in pertinent part:

that in every action upon a sealed instrument, or where a set-off is founded on a sealed instrument, the seal thereof shall be only presumptive evidence of a sufficient consideration, which may be rebutted, as if such instrument was not sealed * * *

While this statute may well have been *intended* to render unenforceable a sealed gratuitous promise, it failed of that effect, at least as to a promise made prior to enactment of the statute. At common law the seal did not merely constitute a *presumption of consideration*, but served as an *alternative* to consideration as a means of rendering a contract enforceable. Therefore the 1875 statute, construed literally, struck only a glancing blow at the seal. The mere rebutting of *consideration* did not in terms destroy the effect of the seal itself, which made the contract binding without regard to consideration. In *Aller v. Aller, supra,* the New Jersey Supreme Court so held. See Corbin, Contracts, sec. 254 (1963). It has been suggested that *Aller's* rather technical construction of the 1875 statute was merely a means of avoiding the constitutional problems attendant upon permitting the legislature retroactively to void a preexisting contract which was binding when entered into. See *Trustees First Presbyterian Church v. National State Bank, supra;* Restatement, Contracts, sec. 110 (N.J. Annot. 1936) (Prepared under the auspices of New Jersey State Bar Association.) Be that as it may, we consider it of obvious significance that *after Aller* effectively negated the 1875 version of the statute, the New Jersey legislature in 1900 *added* the language substantially similar to the present statute, to the effect that: "in every action upon a sealed instrument * * * any party may plead and set up as a defense * * * want * * * of consideration * * * as if such instrument were not sealed." If one were to go about statutorily meeting the *Aller* objection to the 1875 draftsmanship, it is hard to conceive of more apt words to achieve that objective.

Our opinion could have ended with quoting the current statute were it not for a 1941 per curiam decision of the New Jersey Court of Errors and Appeals handed down long after the 1900 statute had been enacted. In this brief and cryptic opinion, it was held, without citing or discussing the relevant statutes, that a sealed promise was enforceable without

consideration, because "It is not essential in order to make a promise under seal operative as a sealed contract, that consideration be given for the promise." *Zirk v. Nohr,* 127 N.J.L. 217, 21 A.2d 766 (Ct. Err. & App. 1941).

Regardless of the statutory language, were we convinced that *Zirk v. Nohr* represented an authoritative exposition of current New Jersey law, we would be constrained to agree with petitioner. See *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967). However, we are of the view that this opinion would not be followed today by the New Jersey Supreme Court. It was, in the first place, an unexplicated brief per curiam opinion. It did not cite either the 1875 or the 1900 version of the statute, or give any indication the statute had been considered. More important, it quite clearly miscited the sole authority it relied on, *United & Globe Rubber Mfg. Cos. v. Conard,* 80 N.J.L. 286, 78 A. 203 (Ct. Err. & App. 1910). In *United & Globe Rubber Mfg. Cos.,* the New Jersey court had correctly held that a partial failure of consideration *not going to the essence* was not a defense. In *Zirk v. Nohr,* however, this opinion was cited for the proposition that a seal obviated the necessity for consideration. As Corbin says, in criticizing *Zirk v. Nohr, United & Globe Rubber Mfg. Cos.* "neither says nor holds any such thing." Corbin, *supra* at sec. 254 n. 19. Moreover, a number of New Jersey cases more recent than *United & Globe Rubber Mfg. Cos.* appear to give substantive effect to the statute. *Whitehead v. Villapiano,* 16 N.J. Super. 415, 84 A.2d 731, 735–736 (App. Div. 1951); *Weinberg v. Weinberg,* 118 N.J. Eq. 97, 98, 177 A. 844 (Ch. 1935); *Marvel v. Jonah,* 81 N.J. Eq. 369, 373, 86 A. 968, 970 (Ch. 1913) (dicta), revd. on another ground 83 N.J. Eq. 295, 90 A. 1004 (Ct. Err. & App. 1914).

We are of the opinion that if faced with the issue today, the highest court of New Jersey would more probably than not refuse to follow the opinion in *Zirk v. Nohr,* and would not enforce the gratuitous promise under seal. This conclusion is supported by the trend of modern cases. Research has disclosed no recent instance in which any court in the United States has enforced a gratuitous promise under seal. Since

petitioner's bonds were not in our view legally enforceable in New Jersey, interest paid thereon is nondeductible.

*Decision will be entered for the respondent.*