T.C. Memo. 2001-168

UNITED STATES TAX COURT

NICHOLAS M. ROMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11646-97.                     Filed July 6, 2001.

Nicholas M. Romer, pro se.[1]

<u>Elizabeth Downs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following
deficiencies, additions to tax, and penalties with respect to

---

[1] At trial, petitioner was represented by <u>Howard S. Kleyman</u>,
who entered his appearance shortly before the trial date and
withdrew as attorney of record immediately after the trial.

petitioner's Federal income taxes:[2]

| Year | Deficiency | Addition to Tax Sec. 6654(a) | Civil Fraud Penalty Sec. 6663 |
|------|-----------|------------------------------|-------------------------------|
| 1989 | $ 84,472 | $5,708 | $ 63,354 |
| 1990 | 95,905 | 6,343 | 71,929 |
| 1991 | 153,032 | 8,702 | 114,774 |

After concessions by both parties,[3] the issues for decision are: (1) Whether petitioner is entitled to deductions for aviation-related expenses, not previously claimed on his Federal income tax returns, in excess of amounts agreed to by respondent; (2) whether petitioner is liable for civil fraud penalties under section 6663; and (3) whether the period of assessment for taxable year 1989 has expired.[4]

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] As discussed more fully infra, the parties stipulated the amounts of petitioner's unreported gross income from various sources and certain allowable deductions related thereto. In addition, respondent concedes that petitioner is entitled to deductions with respect to losses on the sale of two aircraft for taxable years 1989 and 1990 in the respective amounts of $13,195 and $6,591. Respondent also concedes that petitioner is entitled to a math error adjustment, in his favor, to reported Schedule C, Profit or Loss From Business, costs of operations in the amount of $8,000 for taxable year 1989 and rental deductions in the total amount of $5,427 for taxable year 1991.

[4] We have jurisdiction to redetermine additions to tax under sec. 6654(a) only if no Federal income tax returns were filed for the years before the Court. See sec. 6665(b)(2); see also Meyer v. Commissioner, 97 T.C. 555, 562 (1991); Sigel v. Commissioner, T.C. Memo. 2001-138. Because petitioner filed a Federal income tax return for each year before the Court, the

(continued...)

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference.  When he filed his petition, petitioner resided in Franklin, Tennessee.

Petitioner's Accounting Activity

During the years in issue, petitioner was a certified public accountant (C.P.A.) practicing with Romer & Co., a Minneapolis, Minnesota, accounting business that he founded in 1974.  As part of his accounting practice, petitioner prepared individual State and Federal income tax returns for aircraft pilots.

Petitioner's Aviation Activities

During the years in issue, petitioner also engaged in various aviation activities as a licensed commercial pilot, a certified flight instructor, a licensed aircraft dealer, an airline transport pilot, and a charter pilot (the aviation activities).  During the years in issue, petitioner owned, at different times, four aircraft:  A Piper Navajo N1430S, a Piper Navajo N55CT, an Aero Commander N163D, and a King Air N623R (collectively, the aircraft).  Petitioner used the aircraft in his aviation activities.

During the subject years, petitioner had no charter certificate.  In order to fly his aircraft on charter flights,

---

[4](...continued)
Court lacks jurisdiction to redetermine the sec. 6654(a) additions to tax.

petitioner associated himself with Great Lakes Air d/b/a Cirrus Air Charter (Great Lakes) and Cirrus Flight Operations (Cirrus). Great Lakes possessed a charter certificate and operated an air charter business. Cirrus sold fuel and provided maintenance to small aircraft. During the years in issue, Great Lakes and Cirrus were owned, in part, by Richard Cross (Cross), who was a pilot for Sun Country Airlines, and in part by an unrelated business entity known as General Housewares.

Pursuant to an agreement with Cross, petitioner flew his aircraft on charter flights under Great Lakes' charter certificate. Sometimes, Cirrus would arrange for other pilots to fly petitioner's aircraft on charter trips.[5]

Apparently, petitioner was entitled to receive all the income generated from flights using his aircraft and was credited with all the income and charged with associated expenses incurred by Great Lakes or Cirrus in an account that he maintained with Great Lakes (Great Lakes account). Romer & Co. provided accounting services for Great Lakes and Cirrus and prepared their Federal income tax returns.

---

[5] The record is unclear as to the exact relationship of these other pilots to Cirrus and to petitioner. One of the pilots, Richard Matthews, testified that his income from the flights in question was reported on Forms 1099 issued by Great Lakes and stated: "I believe we'd be called subcontractors".

During each of the years in issue, petitioner received gross receipts and incurred expenses with respect to his aviation activities.

Petitioner's Tax Returns

For the years in issue, petitioner personally prepared his Federal income tax returns.  He reported no gross income or expenses from his aviation activities.  On Schedule C, Profit or Loss From Business, he reported gross receipts and net profit from "Bookkeeping and Accounting" as follows:

| Year | Gross Receipts | Net Profit |
| --- | --- | --- |
| 1989 | $116,869 | $23,177 |
| 1990 | 165,116 | 25,122 |
| 1991 | 13,200 | 13,200 |

The Criminal Investigation

In the early 1990's, petitioner became the subject of an investigation by the Internal Revenue Service Criminal Investigation Division (CID).  On several occasions in 1992, as part of that investigation, undercover CID agents posing as new clients of Romer & Co. met with petitioner and surreptitiously recorded their conversations.  The criminal investigation culminated in the April 15, 1996, indictment of petitioner on three counts of violating section 7206(1) with respect to his individual Federal income tax returns for taxable years 1989, 1990, and 1991, for willfully making and subscribing false tax

returns, under penalties of perjury, knowing that he had underreported gross receipts from his accounting firm and had failed to report any gross receipts from his aviation activities.

On August 13, 1996, petitioner entered into a plea agreement, pleading guilty to one count of willfully failing to supply information on his 1991 Federal income tax return pursuant to section 7203. The plea agreement states that petitioner "admits that the civil fraud penalty and interest applies to whatever additional tax he is deemed to owe after pursuing remaining civil remedies for tax years 1989-1991." Petitioner was ultimately sentenced to 6 months' imprisonment.

Notice of Deficiency

In the notice of deficiency, dated April 10, 1997, respondent determined that petitioner had failed to report gross receipts from his accounting and aviation activities and other sources in the following amounts:

| Year | Romer & Co. | Aviation Activities | Other Income |
|------|-------------|---------------------|--------------|
| 1989 | $144,607 | $ 69,889 | $1,966 |
| 1990 | 183,344 | 77,881 | 4,148 |
| 1991 | 369,337 | 102,313 | 978 |

Respondent also determined that petitioner is subject to the section 6663 civil fraud penalty and the section 6654(a) addition to tax for failing to pay estimated taxes for each of the subject years.

OPINION

A.  Aviation Expenses

Petitioner concedes that he failed to report gross receipts in the amounts determined in respondent's notice of deficiency. He contends, however, that he is entitled to deduct associated business expenses not claimed on his returns for the subject years. He claims that these newly asserted deductions more than offset the gross proceeds that he omitted from his returns and that consequently he has no deficiency for any year in issue.

The parties have stipulated that petitioner is entitled to certain deductions not claimed on his return with respect to both his aviation activities and the Romer & Co. accounting business.[6] Giving effect to the parties' concessions and stipulations results in net losses from petitioner's aviation activities for each of the years in issue but indicates positive net income from petitioner's other activities. Seeking to eliminate any remaining net income (and indeed to produce significant net losses) from his accounting business and other

---

[6] Respondent concedes that petitioner is entitled to the following Schedule C deductions (including depreciation), which were not claimed on petitioner's Federal income tax returns:

| Year | Romer & Co. | Aviation Activities |
|------|-------------|---------------------|
| 1989 | $ 99,805 | $ 75,049 |
| 1990 | 119,106 | 91,646 |
| 1991 | 267,257 | 166,687 |

sources, petitioner seeks to deduct the following additional

expenses relating to his aviation activities, not previously

claimed on his return and not agreed to by respondent (the

unagreed expenses):

| Year | Amount |
|------|--------|
| 1989 | $40,074 |
| 1990 | 53,372 |
| 1991 | [1] 47,504 |

[1] This amount includes additional depreciation of
$20,847 that petitioner is claiming on one of his
aircraft.  The $47,504 amount is also based, in part,
on petitioner's alleged duplicate living expenses
assuming that Nashville, Tenn., is petitioner's tax
home.  If Minneapolis, Minn., is assumed to be
petitioner's tax home, the amount claimed is $43,476.

Section 162 generally allows a deduction for all ordinary

and necessary expenses paid or incurred during the taxable year

in carrying on a trade or business.  An expense is ordinary if it

is customary or usual within a particular trade, business, or

industry or relates to a transaction "of common or frequent

occurrence in the type of business involved."  Deputy v. du Pont,

308 U.S. 488, 495 (1940).  An expense is necessary if it is

appropriate and helpful for the development of the business.

Commissioner v. Heininger, 320 U.S. 467, 471 (1943).  Expenses

that are personal in nature are generally not allowed as

deductions.  Sec. 262(a).

When a taxpayer establishes that he has incurred deductible

expenses but is unable to substantiate the exact amounts, we can

estimate the deductible amount, but only if the taxpayer presents

sufficient evidence to establish a rational basis for making the estimate.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and precludes us from estimating the taxpayer's expenses with regard to certain items.  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).  Section 274(d) imposes strict substantiation requirements for expenses relating to, among other things, travel, entertainment, and "listed property", including automobiles and other property used as a means of transportation. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To obtain a deduction for such items, the taxpayer must substantiate "by [either] adequate records or sufficient evidence corroborating * * * [his] own statement" the amount of the expense, the time and place of travel or entertainment, the business purpose of the expense, and the business relationship to the taxpayer of the person entertained. Sec. 274(d); Beale v. Commissioner, T.C. Memo. 2000-158; sec. 1.274-5(b)(1), Income Tax Regs.  To meet the "adequate records test", a taxpayer must maintain an account book, diary, statement of expense, or similar record prepared contemporaneously with the expenditure and documentary evidence of certain expenditures,

such as receipts or bills. See sec. 1.274-5(c)(2), Income Tax Regs. In combination, these records must be sufficient to establish each element--amount, time and place, business purpose, and business relationship--of the expenditure for which a deduction is sought.

In the absence of adequate records to substantiate each element of an expense under section 274, a taxpayer may alternatively establish such element: (A) By his own statement, whether written or oral, containing specific information in detail as to such element; and (B) by other corroborative evidence sufficient to establish such element. See sec. 1.274-5(c)(3), Income Tax Regs.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of establishing entitlement to any claimed deduction. See Rule 142(a); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. See sec. 6001; sec. 1.6000-1(a), (e), Income Tax Regs.

For the most part, the business records that petitioner relies upon to establish his claimed deductions do not reflect the sort of systematic record keeping that one might expect of a practicing C.P.A. Rather, they more closely resemble the

proverbial shoebox. His extensive miscellany of documents includes photocopied bank statements, checks (some canceled, some not), credit card invoices, flight log pages, and so forth. Many of these documents contain cryptic and oftentimes indecipherable notations, generally handwritten. Petitioner suggests various explanations for the inadequacy of his records, none of which we find convincing.[7]

---

[7] On brief, petitioner makes passing allegations that respondent seized "all of * * * [his] financial and other records together with most of Cirrus' records" and that when respondent returned those records "they were not in the same order or condition in which they had been when seized." Petitioner does not explain why he would not have retained copies of the documents that he turned over to respondent, or indeed what has become of the originals. Even if we were to assume, for sake of argument, that petitioner's allegations were true, these allegations do not address the larger point that petitioner might be required to maintain more systematic records than he alleges to have turned over to respondent. In any event, petitioner offered no evidence as to how respondent's treatment of the records hindered his ability to present his case at trial.

Additionally, petitioner suggests on brief that he once possessed certain records (e.g., fuel purchase receipts, appointment books, billing records, and aircraft maintenance records) that would have bolstered his case, but that prior to trial, he had either discarded these records or no longer had them in his custody or control, thereby preventing their use at trial. We find petitioner's allegations unconvincing, particularly in light of the ongoing criminal investigation of petitioner before his plea agreement in 1996. Moreover, petitioner bears the burden of proof, and we cannot assume that the discarded or lost records would have helped him.

Petitioner further complains that, but for respondent's evidentiary objections and vigorous application of the Federal Rules of Evidence, he would have been able to offer sufficient evidence to substantiate his alleged expenses. The short answer is that petitioner cannot carry his evidentiary burden with incompetent evidence. This Court is obligated to follow the

(continued...)

Apparently recognizing the shortcomings in his documentary evidence, petitioner seeks to overcome them by his own detailed and highly self-serving testimony. As a preliminary matter, we note that petitioner was not a credible witness. As previously discussed, he is an experienced C.P.A. and self-professed tax expert who consciously ignored the requirements of the Internal Revenue Code. He offers many excuses, but no good reason, why his contemporaneous business records so poorly substantiate his claimed deductions, and why in fact he omitted the claimed deductions from his tax returns, only to assert them in niggling detail years later after being indicted and conceding that he omitted great sums of gross income.[8] The explanations petitioner has offered--e.g., that he was motivated by his desire to avoid detection by various State and Federal authorities who might find

---

[7](...continued)
Federal Rules of Evidence. See sec. 7453; <u>Malinowski v. Commissioner</u>, 71 T.C. 1120, 1125 (1979). At trial, petitioner was represented by counsel, who was given ample opportunity to respond to respondent's evidentiary objections and to raise objections of his own regarding evidentiary matters or any other matter relating to the conduct of the trial.

[8] Among petitioner's many implausible arguments is one that he believed there was no harm in his omitting the gross income because he knew, thanks to his tax expertise, that he would have been entitled to even greater amounts of deductions, if he had claimed them, that would have eliminated any net tax liability and in fact would have produced losses for tax purposes. We do not believe that petitioner would have consciously foregone claiming such losses. In the course of this proceeding, we have observed in petitioner no hint of such largesse toward the fisc. We do observe, however, that petitioner's continued attempts to exonerate himself with such ludicrous arguments reflect adversely on his credibility.

the conduct of his various business activities problematical or illegal--do nothing to enhance his credibility. Petitioner's demeanor on the stand, his admitted criminal conduct, and (as discussed in more detail infra) impeaching evidence originating from his criminal investigation all combine to undermine his credibility severely. Petitioner's testimony struck us as in good part invention, contrived to meet the needs of trial according to his self-professed knowledge (if belated appreciation) of the applicable legal requirements. In short, we are unable to give petitioner's testimony much weight.

1. Aviation Fuel

Petitioner seeks to deduct expenses, not claimed on his return, that he allegedly incurred for aviation fuel. The parties agree that petitioner is entitled to deductions for fuel expenses paid by debits on petitioner's Great Lakes account, by check, and by his Visa credit card (the credit card) for taxable years 1989, 1990, and 1991 in the respective aggregate amounts of $4,926, $11,328, and $612. The parties disagree as to whether petitioner is entitled to deductions for aviation fuel expenditures that petitioner alleges he made in cash, in the amounts of $13,803, $27,287, and $3,276, for the years 1989, 1990, and 1991, respectively. The parties also disagree as to whether petitioner is entitled to deductions for fuel expenses charged to petitioner's credit card in taxable years 1990 and 1991 in the amounts of $4,912 and $710, respectively.

As to the claimed cash purchases of fuel, petitioner has no receipts to support his expenditures. Petitioner attempts to fill this evidentiary void by the following methodology: First, petitioner uses his flight logbooks for each of the subject years to obtain the total hours that he alleges were flown in each of his aircraft. Next, petitioner postulates the number of gallons each aircraft consumed per hour of flight to estimate the total number of gallons of fuel each of his aircraft consumed each year, based on the hours he claims the aircraft were flown. Then, to arrive at his total fuel expenses for each year, petitioner postulates the average cost of a gallon of aviation fuel for the years in question and multiplies that figure by the number of gallons he estimates each aircraft to have consumed. Finally, petitioner subtracts from the total fuel expenses for each year the amount of fuel expenditures he has documentation for and arrives at the amount he says he must have purchased with cash in each year.

We find petitioner's methodology deficient in practically every respect. In particular, petitioner has failed to corroborate his self-serving testimony with any competent proof as to the fuel efficiency of his aircraft or the cost of aviation fuel during the relevant time periods. Indeed, petitioner's testimony leaves us unpersuaded that he actually incurred the cash expenditures.

Moreover, the evidence fails to establish that petitioner's alleged aviation fuel expenses--either those allegedly paid in cash or those charged to his credit card--were exclusively for business purposes.  Petitioner testified that his aircraft were never flown for nonbusiness purposes.  This testimony is directly contradicted by petitioner's prior statements.  During the criminal investigation of petitioner, undercover CID agents posing as potential clients for Romer & Co. secretly taped conversations with petitioner.  The transcripts from those conversations, which are part of the record in this case, reveal that petitioner not only used his aircraft for recreational purposes, but that he claimed personal expenses incurred on recreational trips as business expenses.  For instance, during an August 19, 1992, conversation, petitioner discussed with undercover CID agents, who were using the pseudonyms "Bill Fraizer" and "Dave Hamilton", the possibility of their buying his aircraft and operating it under Cirrus' charter certificate:

> BILL FRAIZER:  But, if we -- if we had you * * * [keep track of our expenses, Cirrus] could send everything to you, couldn't they?

> *     *     *     *     *     *     *

> NICK ROEMER [Romer]:  Sure.  But then what you would show on your tax return is you're an air charter business, and each of you would do it.  And you would show X amount of income coming in and then all of your expenses, the maintenance and all of that kind of stuff.  But then beyond that you would deduct any other fun things you're doing that otherwise you don't have a place to deduct right now.

BILL FRAIZER:  Okay.

NICK ROEMER [Romer]:  You know, your trips out to, wherever.

DAVE HAMILTON:  Uh-huh.

BILL FRAIZER:  Yeah.

NICK ROEMER [Romer]:  And you deduct all of your personal flying on it.  When I'd fly my airplanes, I used to take a lot of ski trips out to Colorado.  And I, and I deduct all of the fuel and all of the expenses associated with those, and those were just nothing but going out skiing for the weekend.

DAVE HAMILTON:  Sure.

BILL FRAIZER:  Sure.

NICK ROEMER [Romer]:  So, in terms of the income tax side of it, you can really put a big hole in your tax return with an airplane.  And as long as you're spending other money having fun doing other things. You go down to Florida deep sea fishing or something, you take an airplane down there.  The IRS has no knowledge of what the purpose of that trip was.

Particularly in the light of these damning admissions, we do not believe petitioner's testimony that he used the aircraft exclusively for business purposes.

Petitioner argues that his credit card receipts substantiate business purposes for all the aviation fuel he purchased on his credit card.  The receipts do not substantiate business purposes directly.  Petitioner argues, however, that entries in his flight logbooks complete the picture.  The photocopied pages of flight logbooks placed into evidence by petitioner contain several columns of information including, generally, the dates of flights, the make and model of the aircraft flown, and where the

aircraft traveled.  One of the columns in the flight logbooks is entitled "PROCEDURES-MANEUVERS".  Petitioner contends that he contemporaneously listed the business purpose of each flight in the flight logbooks by making notations in the PROCEDURES-MANEUVERS column.  Of the approximately 460 flights listed in petitioner's flight logbooks, however, only slightly over half have accompanying notations in the PROCEDURES-MANEUVERS column. The notations that do exist are generally indecipherable and do not enable the Court to determine the business purpose of the subject flights.[9]  Petitioner's testimony, whereby he attempts to supplement or explain the documentary evidence, we do not find reliable or trustworthy.

Petitioner also offered the testimony of two witnesses, Cross and Richard Matthews (Matthews) to establish that all of the flights in his aircraft were for business purposes.  We found the testimony of Cross and Matthews to be vague and evasive in material respects.  In these circumstances, we are not required to, and do not, accept their testimony.  See Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Clark v. Commissioner, 266 F.2d 698, 708-709 (9th Cir. 1959), affg. and remanding on another issue T.C. Memo.

---

[9] The cryptic notations include statements such as "no heater" or "6 landings".  One notation contains simply a check mark.  Many of the notations are merely names without further explanation.

1957-129; <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986); <u>Shackelford v. Commissioner</u>, T.C. Memo. 1994-271.

In sum, although petitioner was intimately familiar with the substantiation requirements of the Tax Code, he chose not to keep adequate records of alleged fuel expenditures that went unclaimed on his Federal tax returns as filed and that he claims now to offset gross income that he concedes he improperly omitted from his Federal tax returns. Petitioner has failed to adequately substantiate the unagreed aviation fuel expenses.

2. <u>Depreciation on Petitioner's Aircraft</u>

In February 1991, petitioner purchased a King Air-N623R aircraft (King Air) for $225,000 and subsequently placed it in service. On his 1991 tax return, petitioner claimed no depreciation deduction with respect to the King Air. Petitioner now asserts that he is entitled to depreciation deductions of $53,000 with respect to the King Air, based on an asserted 5-year useful life of the aircraft and the availability of additional $10,000 "first-year depreciation" pursuant to section 179. Respondent concedes that petitioner is entitled to a 1991 depreciation deduction of $32,153 with respect to the King Air, based on a 7-year class life and the half-year convention under section 168.

Section 167(a)(1) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business. Depreciation on tangible

assets placed in service after December 31, 1980 (as the King Air was), is generally determined under the accelerated cost recovery system (ACRS) of section 168. See sec. 168(a); C&M Amusements, Inc. v. Commissioner, T.C. Memo. 1993-527. Application of ACRS is generally mandatory and precludes computation of depreciation based on estimated useful life for tangible property acquired after 1980. See C&M Amusements, Inc. v. Commissioner, supra; Grinalds v. Commissioner, T.C. Memo. 1993-66.

ACRS deductions are determined using the "applicable recovery period", along with prescribed depreciation methods and conventions. Sec. 168(a). Here, the parties disagree only about the applicable recovery period, so we confine our consideration to that issue.

Under ACRS, aircraft are classified as "7-year property". Section 168(e)(3)(C); Rev. Proc. 87-56, 1987-2 C.B. 674 (asset class 45.0), clarified and modified by Rev. Proc. 88-22, 1988-1 C.B. 785. The applicable recovery period for 7-year property is 7 years. See sec. 168(c)(1). Therefore, pursuant to section 168(a), petitioner must depreciate the King Air over 7 years. Accordingly, petitioner is not entitled to additional depreciation based on an asserted 5-year useful life of the King Air.

Furthermore, petitioner is not entitled to any allowance under section 179. Generally, section 179(a) permits a taxpayer to elect to expense the cost of tangible personal property for

the year that the property is placed in service. The allowance is limited to $10,000, reduced (but not below zero) by the amount by which the cost of the section 179 property placed in service exceeds $200,000. See section 179(b). Thus, the allowance is zero if the cost of the section 179 property exceeds $210,000. Because petitioner purchased the King Air in 1991 for $225,000, no section 179 allowance is available.[10]

### 3. Parts and Repairs

For taxable year 1989, petitioner seeks deductions totaling $941 for unagreed expenses allegedly incurred for various parts and repairs required for his aircraft. Respondent generally contends that petitioner has failed to substantiate the business purpose for each expenditure.[11]

On the basis of our review of the documentary evidence in the record, we find that petitioner has adequately substantiated an expenditure of $808 for an aircraft part. He has failed, however, adequately to substantiate business purpose for the remaining unagreed expenses at issue, which include numerous small payments allegedly made to auto parts stores, a hardware

---

[10] It also appears that petitioner made no proper election for the sec. 179 allowance. See sec. 179(c). Given our holding that petitioner is not entitled to any sec. 179 allowance, however, we need not address this issue.

[11] Respondent does not contend that any of petitioner's alleged expenditures for parts should have been capitalized under sec. 263. Accordingly, we do not reach this issue.

store, and various food vendors (e.g., Domino's Pizza and Arby's).

4. <u>Supplies</u>

Petitioner seeks to deduct unagreed expenses allegedly incurred in purchasing "supplies" for his aviation activities in 1989, 1990, and 1991. The "supplies" allegedly purchased include, among other things, grass seed, snacks (e.g., peanuts, candy, soft drinks), loofa sponges, toothpaste, mouthwash, soap, light bulbs, tools, sporting goods items, a shower curtain, batteries, miscellaneous items from auto parts stores, liquor, and clothing. Petitioner contends that some of the alleged purchases were made with cash. For these items, there is no corroborating documentation. To substantiate other items, petitioner has entered into evidence various receipts, credit card statements, canceled checks, and a check register. None of these documents directly establish business purpose. Petitioner seeks to fill these evidentiary gaps with his own self-serving testimony, which we do not find credible or reliable.[12]

On the basis of our review of all the evidence, we conclude and hold that petitioner has failed to adequately substantiate the amounts or business purposes of his alleged supplies

---

[12] Petitioner's documentary evidence includes cash register receipts from retail department or hardware stores listing numerous purchases in generally small amounts. Petitioner purported to recall with great specificity the circumstances and business purpose of individual, small-dollar items on these decade-old receipts. We did not find his testimony credible.

expenditures, many of which appear to reflect significant elements of personal consumption. Even if we were to assume, arguendo, that some of these expenditures were for items used aboard petitioner's aircraft, this fact would not in and of itself substantiate business purpose, for as previously discussed, in the criminal investigation petitioner admitted that he used his aircraft for personal purposes. Even if we were to assume, arguendo, that some of these expenditures were for legitimate business purposes, the evidentiary record does not provide a rational basis for identifying or estimating such expenditures to the exclusion of the personal expenditures that we believe are included in these unagreed expenses.

Petitioner has failed to establish entitlement to deductions he claims for supplies.

5. <u>Labor Expenses</u>

Petitioner seeks to deduct as business expenses two checks totaling $306 drawn on Romer & Co.'s checking account and made payable to "Jennie Sheffers" (Sheffers). Petitioner contends that he gave the checks to Sheffers as payment for washing and waxing his aircraft. The checks themselves do not have any notation as to why they were made payable to Sheffers. Besides petitioner's own self-serving testimony, we have no corroborative evidence as to why these checks were drawn. We find it telling that these checks were drawn on Romer & Co.'s checking account rather than on the checking account set up for petitioner's

aviation activities. Petitioner admitted at trial that he used Romer & Co.'s checking account to pay his personal expenses. Thus, the evidence does not rule out the possibility that petitioner made the checks at issue payable to Sheffers to cover personal expenses. Petitioner has failed to substantiate business purpose for these payments.

6. Pilot Expenses

Petitioner contends that pilots who flew his aircraft generally charged their expenses to his credit card. He also contends that he reimbursed one pilot named Adrian Grimm (Grimm) $2,010 by paying that amount directly to Grimm's creditors. Petitioner claims he is entitled to deduct the $2,010 as a business expense under section 162.

In support of his claim, petitioner introduced into evidence five checks made payable to parties that petitioner contends were Grimm's creditors. While the checks themselves make no mention of Grimm, the notations in petitioner's check register contain such statements as "Adrian Grimm-Fuel & Expense", "for Adrian", or just "Adrian".

Petitioner has failed adequately to establish that the payments in question were for pilot services rendered.

7. Rent

Petitioner seeks a deduction for a check in the amount of $200 for hangar rent for June 1989. On the basis of the documentary evidence in the record, we conclude that petitioner

has adequately substantiated and is entitled to the $200 deduction at issue.

8. Fees

Petitioner seeks deductions for three payments in 1989 in the respective amounts of $10, $110, and $10,000, and three payments in 1990 in the respective amounts of $6, $59, and $91 for "fees".

Petitioner has offered no evidence regarding the $10 and $110 payments in 1989, nor any of the three payments in 1990. Consequently, we deem petitioner to have conceded that these items are not deductible. As for the alleged $10,000 payment, it appears--for reasons that are unclear from the record--that petitioner initially paid this amount to Cross, who at some undetermined later date refunded most if not all of it to petitioner.[13] Petitioner has failed to show that he is entitled to deduct the alleged $10,000 payment.

9. Miscellaneous Cash Expenditures

Petitioner seeks to deduct various cash expenditures that he allegedly made during the subject years for, among other things, aviation maps, charts, hotels, parts, and apartment furnishings. Respondent disallowed petitioner's deductions for these cash expenditures.

_____

[13] Petitioner admitted that a portion of the $10,000 was refunded to him but could not recall the amount. Cross testified that he refunded "pretty much the whole thing" to petitioner.

For the vast majority of the cash expenditures he seeks to deduct, petitioner has no receipts or other records of the expenditures. The only proof petitioner presents to evidence these expenditures consists of his self-serving and uncorroborated testimony. Under the circumstances, we are not required to accept this testimony, and we do not. See Tokarski v. Commissioner, 87 T.C. at 77; Shackelford v. Commissioner, T.C. Memo. 1994-271. Thus, petitioner is not entitled to deduct these expenditures.

As to those expenditures for which petitioner presented receipts, he failed to present evidence of the business purpose for each expenditure. Many of these expenditures appear to be of a personal nature.

Accordingly, petitioner is not entitled to any of the deductions sought for these expenditures.

10. Subscriptions

For 1991, petitioner seeks to deduct a $59 subscription payment to a trade publication, Trade-A-Plane. Subscription expenses with respect to trade and professional magazines relating to a taxpayer's trade or business are deductible under section 162. See Kasey v. Commissioner, 54 T.C. 1642, 1650 (1970), affd. 457 F.2d 369 (9th Cir. 1972). In 1991, petitioner was a licensed aircraft dealer engaged in the business of buying and selling aircraft. On the basis of documentary evidence in

the record, we conclude that petitioner has adequately established entitlement to the claimed subscription expense.

11.  Home Office Expenses

Petitioner claims home office deductions of $1,867 and $1,996 for taxable years 1989 and 1990, respectively. Petitioner alleges that because there was no office space at Great Lakes available to him, he used space in his home as the principal place of business for his aviation activities.

Respondent denies that petitioner's residence constituted the principal place of business for petitioner's aviation activities.  Accordingly, respondent has disallowed petitioner any deduction for home office expense.

Generally, an individual taxpayer may not deduct expenses with respect to a dwelling unit that the taxpayer uses as a residence during a taxable year.  See sec. 280A(a).  This general rule does not apply, however, where the taxpayer uses a portion of the residence regularly and exclusively as either:  (1) The taxpayer's principal place of business, or (2) a place of business which is used by clients or customers in meeting or dealing with the taxpayer in the normal course of the taxpayer's business.  See sec. 280A(c)(1)(A) and (B).[14]  Petitioner does not allege that he met clients at his home; rather, he contends that

---

[14]  The exception provided in sec. 280A(c)(1)(C) is inapplicable, as petitioner has not alleged that he used any separate structure not attached to his dwelling unit.

his home was the principal place of business for his aviation activities.

Where a taxpayer's business is conducted in part at the taxpayer's residence and in part at another location, there are two primary considerations in determining whether the home office qualifies as the taxpayer's principal place of business: (1) The relative importance of the functions or activities performed at each business location, and (2) the time spent at each location. See Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993); Strohmaier v. Commissioner, 113 T.C. 106, 111-112 (1999).[15]

As a threshold matter, we are unpersuaded of the truth of petitioner's allegation that he had no office space at Great Lakes available to him.[16] For this reason alone, we question whether petitioner's home was his principal place of business.

---

[15] Effective for taxable years beginning after Dec. 31, 1998, sec. 280A was amended so that the term "principal place of business" now includes a place of business that the taxpayer uses to perform administrative or management activities related to the taxpayer's trade or business if there is no other fixed location of the trade or business where the taxpayer conducts substantial administrative or management activities. Sec. 280A(c), as amended by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 932(a), 111 Stat. 788.

[16] When applying for an aircraft dealer's license, petitioner represented to the Minn. Dept. of Transp. that he leased from Great Lakes 150 sq. ft. of office space at the Anoka airport to use "as an operating base" for his aircraft dealer business. The issuance of an aircraft dealer's license by the Minn. Dept. of Transp. to petitioner was based in part upon this representation. Petitioner now claims that he had no office space at Great Lakes and was forced to use his home to conduct business activities. We find petitioner's convenient change of story troubling.

Petitioner alleges that he used space in his home for, among other things, storing supplies, parts, and materials, flight planning, business planning, purchasing aircraft parts, and searching for aircraft sales. The only proof petitioner presents to evidence these allegations consists of his self-serving and uncorroborated testimony. For the reasons discussed supra, we do not accept his testimony. See Tokarski v. Commissioner, supra at 77; Shackelford v. Commissioner, supra.

Comparing the time that petitioner spent at home with the amount of time he spent at other places where aviation-related activities occurred supports a determination that petitioner's home was not his principal place of business. See Fryer v. Commissioner, T.C. Memo. 1974-77. Nothing in the record suggests that the amount of time petitioner spent engaged in aviation-related activities at home was significant in relation to the amount of time he spent at other business locations where aviation-related activities occurred. For example, from petitioner's testimony at trial, we understand that a large part of his work as an aircraft dealer involved travel away from his home. Thus, without more, we cannot say that petitioner spent more time at his home office on aircraft sales than he did traveling. See Commissioner v. Soliman, supra at 175-176; Beale v. Commissioner, T.C. Memo. 2000-158.

Accordingly, having failed to prove that his home was his principal place of business, petitioner is not entitled to deductions for home office expenses.

12. Automobile Mileage Expenses

Petitioner seeks to deduct Minneapolis-area vehicle mileage expenses of $5,992, $5,866, and $1,248 for taxable years 1989, 1990, and 1991, respectively. He alleges that these expenses arose from driving his automobiles from either his residence or from Romer & Co. to, among other places, airports and various retailers to make purchases for his aviation activities.

A taxpayer's costs of commuting to and from his place of business are nondeductible, personal expenses. See Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); Feistman v. Commissioner, 63 T.C. 129, 134 (1974); secs. 1.162-2(e) and 1.262-1(b)(5), Income Tax Regs. A taxpayer's costs of transportation between his residence and local job sites may be deductible if his residence serves as his "principal place of business" and the travel is in the nature of normal and deductible business travel. Strohmaier v. Commissioner, 113 T.C. at 113-114; Wis. Psychiatric Servs., Ltd. v. Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980).

As we held above, petitioner failed to prove that his residence was the "principal place of business" for his aviation activities. Consequently, mileage expenses for trips either to

or from petitioner's residence are nondeductible commuting expenses. The record provides no reliable basis for segregating petitioner's nondeductible personal use of his automobile from any business use (e.g., trips from Romer & Co. to a local airport or to purchase supplies). For this reason alone, petitioner has failed to establish entitlement to the claimed mileage deductions.

Even if we were to assume, arguendo, that whatever miles petitioner might have driven in the course of normal and deductible business travel could be, on some rational basis, segregated from his commuting mileage, petitioner has still failed to substantiate his expenses adequately. Passenger automobiles are "listed property" under section 280F(d)(4)(A)(i). Thus, the mileage expenses are subject to the heightened substantiation requirements of section 274(d), and no deduction is allowed with respect to the listed property unless for each claimed expenditure or use of listed property petitioner substantiates the requisite elements of amount, time, and business or investment purpose. See sec. 1.274-5A(c)(2), Income Tax Regs.; sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Petitioner has failed to satisfy these statutory requirements.

Petitioner claims mileage expense deductions based on his application of the Federal standard mileage rates to miles he estimates that he drove in business travel. These mileage

estimates, in turn, he claims to base on flight logbooks, some retail store receipts, and a map of the Minneapolis area. Petitioner failed to keep a mileage log and failed to document in any way the business use of his vehicles. Use of the Federal standard mileage rates serves only to substantiate the amount of expenses. See Rev. Proc. 89-66, 1989-2 C.B. 792, updated and amplified by Rev. Proc. 90-59, 1990-2 C.B. 644. Petitioner's records do not substantiate the remaining elements of time and business purpose. Petitioner's unsupported, self-serving testimony did not adequately substantiate any of the necessary elements under section 274(d). Therefore, petitioner is not entitled to deductions for his alleged automobile expenses.

13. Travel Expenses

Petitioner contends that for each of the years at issue he is entitled to deduct unagreed travel expenses, which fall into two general categories: (a) Travel expenses relating to petitioner's Minneapolis-based aviation activities, and (b) travel expenses relating to petitioner's Nashville-based employment with Flagship Airlines.

Under section 262, personal living expenses are generally nondeductible. A taxpayer may deduct travel expenses, including amounts for meals and lodging, incurred "while away from home in the pursuit of a trade or business". Sec. 162(a)(2); see Commissioner v. Flowers, supra at 470. For purposes of section 162(a)(2), a taxpayer is not "away from home" unless he or she is

on a trip that requires sleep or rest.  See United States v. Correll, 389 U.S. 299 (1967).  This rule "requires a stop of sufficient duration that it would normally be related to a significant increase in expenses."  Barry v. Commissioner, 435 F.2d 1290, 1291 (1st Cir.), affg. 54 T.C. 1210 (1970).

To be deductible as an expense incurred while "away from home", a travel expense must be reasonable and necessary, and incurred in pursuit of business.  Sec. 162(a)(2); see Commissioner v. Flowers, supra at 470.  To be deductible under section 162(a)(2), travel expenses must meet the heightened substantiation requirements of section 274(d).  See sec. 274(d)(1).

a.  Travel Expenses Relating to Petitioner's Minneapolis- Based Aviation Activities

Petitioner claims travel expenses relating to his Minneapolis-based aviation activities.  These travel expenses include but are not limited to meals, lodging, rental cars, tips, shoe shines, and laundry.  Petitioner kept no contemporaneous log, diary, journal, or calendar of these expenses.  Instead, petitioner presented voluminous documentary evidence consisting of photocopies of his flight logbooks, receipts, canceled checks, credit card statements, and a check register.  Many of these expenditures were allegedly made with cash, and petitioner has offered no documentary evidence to substantiate that they were actually made.

We have held on numerous occasions that merely presenting the Court with a "blizzard" of receipts and other documents "falls woefully short of meeting the requirements" of section 274. Lynch v. Commissioner, T.C. Memo. 1983-173; see Gilman v. Commissioner, 72 T.C. 730 (1979); Rutz v. Commissioner, 66 T.C. 879 (1976). Giving petitioner the benefit of the doubt, however, we have painstakingly scoured petitioner's documentary evidence in an attempt to decipher whether, in the aggregate or otherwise, petitioner presented adequate records to substantiate any of these alleged travel expenses under section 274. On the basis of our review of all the evidence, we conclude that petitioner has failed to comply with the statutory requirements of section 274. Petitioner's detailed but highly self-serving and noncredible testimony does nothing to cure these infirmities.

Moreover, the record does not establish which, if any, of the expenses at issue were incurred in connection with trips that required petitioner to sleep or rest, within the meaning of United States v. Correll, supra, so as to constitute expenses for travel "away from home" within the meaning of section 162(a)(2). On brief, petitioner suggests that he satisfies the "sleep or rest" rule because the "typical charter flight" was of such duration that FAA requirements would require the pilot to rest for "several hours". Nothing in the record specifically establishes, however, on which trips petitioner might have rested or for how long, or that the duration of the rest would be

related to a significant increase in petitioner's expenses.  See

Barry v. Commissioner, 54 T.C. 1210 (1970) (consulting management

engineer who made 16 to 19-hour business trips during which he

generally rested once or twice briefly in his automobile was not

away from home within the meaning of section 162(a)(2)).

Accordingly, petitioner has failed to establish that the claimed

expenses were incurred on travel away from home, within the

meaning of section 162(a)(2).

Because petitioner has not adequately substantiated the

time, place, and business purpose of his travel, and has failed

to establish that his travel was away from home within the

meaning of section 162(a)(2), we also reject petitioner's

contention that he is entitled to deductions for the cost of

meals and incidentals based on the applicable Federal meal and

incidental expense (M&IE) per diem rate for each day he traveled

"out of town on business".[17]

---

[17] Sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed.
Reg. 46032 (Nov. 6, 1985), grants the Commissioner the authority
to establish a method under which a taxpayer may elect to use a
specified amount for meals and incidentals paid or incurred while
traveling away from home in lieu of substantiating the actual
costs (per diem substantiation method).  For the taxable years at
issue, Commissioner established that method through Rev. Proc.
89-67, 1989-2 C.B. 795 (Rev. Proc. 89-67), amplified, modified,
and clarified by Rev. Proc. 90-60, 1990-2 C.B. 651 (Rev. Proc.
90-60).  Although use of the Federal meal and incidental expense
(M&IE) rate does eliminate some of the substantiation
requirements of sec. 274 (essentially, the cost element), the
taxpayer is not relieved of substantiating the time, place, and
business purpose of the travel.  See sec. 1.274-5T(j), Temporary
Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985); Rev. Proc.
(continued...)

b.  Travel Expenses Relating to Petitioner's Nashville-Based Employment With Flagship Airlines

Background

On March 4, 1991, Flagship Airlines (a division of American Airlines, Inc.), in Nashville, Tennessee, employed petitioner as a pilot.[18]  Shortly thereafter, petitioner moved to Tennessee. From March through December 1991, and thereafter, petitioner resided in Antioch, Tennessee, located near Nashville.[19]  After moving to Tennessee, petitioner leased his house in Minneapolis to an unidentified tenant.

After moving to Tennessee, petitioner divided his time between Nashville and Minneapolis, where he continued to attend to his accounting business and his other aviation activities. Petitioner alleges that he would typically spend "two, three, and sometimes four consecutive days in Nashville" and then return to Minneapolis.[20]

---

[17](...continued)
90-60 at sec. 7.01, 1989-2 C.B. at 799; Rev. Proc. 89-67 at sec. 7.01, 1990-2 C.B. at 656.

[18] On his 1991 Federal income tax return, petitioner reported wages from Flagship Airlines in the amount of $11,226.

[19] For purposes of simplicity and clarity, and because Antioch is located close to Nashville, references hereinafter to Nashville will include references to Antioch.

[20] The record does not specifically indicate where petitioner lodged when he was in Minneapolis, after moving to Tennessee.

Petitioner contends that Minneapolis remained his tax home in 1991.  For 1991, petitioner seeks to deduct as travel expenses $3,552 of "duplicate living expenses" that he allegedly incurred while residing and working in Nashville, away from his tax home of Minneapolis.  These asserted deductions fall into three general categories:  (1) Rent and utilities for an apartment in Nashville; (2) meals and incidental expenses relating to his Nashville employment; and (3) expenditures for the purchase and repair of two automobiles in Nashville.[21]  Petitioner argues alternatively that if Nashville were his tax home in 1991, he is entitled to deduct $7,580 for duplicate living costs he incurred in Minneapolis.  Respondent contends that petitioner's tax home for taxable year 1991 was Nashville and that petitioner is not entitled to deduct living costs incurred in Minneapolis.

Discussion

(i)  Petitioner's Tax Home

In the context of section 162(a)(2), "home" generally means the vicinity of the taxpayer's principal place of employment, rather than the site of the taxpayer's personal residence.  See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).  When a taxpayer has businesses or employment in two places distant from one another, his tax home for purposes of section 162(a)(2) is

---

[21] To the extent that petitioner has asserted deductions for his costs of traveling between Minneapolis and Nashville, these costs appear to be embodied in the asserted travel expenses previously addressed.

the city where he spends more of his time, engages in greater business activity, and derives a greater proportion of his income. See Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), revg. T.C. Memo. 1972-154; Puckett v. Commissioner, 56 T.C. 1092, 1097 (1971); Lagrone v. Commissioner, T.C. Memo. 1988-451, affd. without published opinion 876 F.2d 893 (5th Cir. 1989). For this purpose, the place where the taxpayer maintains his or her permanent residence may be relevant but is not conclusive. See Ziporyn v. Commissioner, T.C. Memo. 1997-151; Lagrone v. Commissioner, supra.

During 1991, petitioner had two business activities--his accounting and aviation activities in Minneapolis--that were distant from his employment with Flagship Airlines in Nashville. Although petitioner maintained his personal residence in Nashville, for most of 1991, all other factors point toward Minneapolis as his tax home. It appears that in 1991 petitioner spent less than half his days in Nashville working for Flagship Airlines, and the remaining time in Minneapolis working for Romer & Co. and performing other aviation activities. More significantly, petitioner earned only $11,226 in income from Flagship Airlines in 1991, while earning gross income of approximately $382,000 from Romer & Co. in Minneapolis and an additional $102,313 from his other aviation activities based in Minneapolis. We conclude that Minneapolis was petitioner's tax home.

(ii) <u>Nashville Rent</u>

From March 1991 and at all relevant times thereafter, petitioner maintained his personal residence in Nashville, where he rented and furnished an apartment; as far as the record reveals, he maintained no regular living quarters in Minneapolis (his tax home).  Petitioner seeks deductions for his Nashville rent and utility expenses.

As far as the record reveals, petitioner's decision to maintain his personal residence at his minor employment post in Nashville rather than near his principal place of business in Minneapolis was a personal choice made for the sake of his own convenience.  Such a decision does not operate to convert personal living expenses into deductible business expenses.  See <u>Mazzotta v. Commissioner</u>, 57 T.C. 427 (1971), affd. without published opinion 465 F.2d 1399 (2d Cir. 1972); <u>Lagrone v. Commissioner</u>, <u>supra</u>.  There is no evidence in the record to indicate that Flagship Airlines required petitioner to live in the Nashville area.  In this regard, this case is less like <u>Folkman v. United States</u>, 615 F.2d 493 (9th Cir. 1980) (allowing commercial pilot's travel expenses between his San Francisco, California, airline duty post and Reno, Nevada, where he resided as a condition of retaining employment with the Nevada Air National Guard), upon which petitioner relies, than <u>Dean v. Commissioner</u>, T.C. Memo. 1976-379 (disallowing commercial pilot's travel expenses between his New York airline duty post and Kansas

City, Missouri, where he resided for personal reasons to which his employment with the Kansas Air Force Reserve was incidental). In any event, the record provides no basis for determining what portion, if any, of petitioner's rental expenses might be properly attributable to his presence in Nashville for the performance of business duties, as opposed to his presence there for personal reasons.

We conclude and hold that the Nashville apartment rental and utilities expenses are not deductible travel expenses under section 162(a)(2).

(iii) <u>Nashville Meals and Incidental Expenses</u>

As previously discussed, the evidence in the record does not adequately substantiate the time, place, or business purpose of petitioner's travel.  Petitioner seems to suggest that with respect to the days he resided in Nashville, the time, place, and business purpose of his travel are substantiated because of his employment there with Flagship Airlines.  We disagree, particularly as to the element of business purpose.   As previously discussed, for the majority of taxable year 1991, petitioner's sole personal residence was in Nashville. Petitioner failed to establish the requisite business purpose for his stays in Nashville.

To the extent petitioner's claim is predicated on travel expenses that might have been incurred in connection with his employment with Flagship Airlines while he was away from his

Nashville residence, petitioner has also failed to establish entitlement to deductible business expenses.  From evidence in the record, it appears that in 1991 Flagship Airlines used the per diem substantiation method to reimburse petitioner $2,848 in travel expenses under an accountable plan, within the meaning of section 1.62-2(c)(2), Income Tax Regs.[22]  Amounts treated as paid to an employee under an accountable plan are excluded from the employee's income.  See sec. 1.62-2(c)(4), Income Tax Regs. Accordingly, no deduction is allowed with respect to such reimbursed expenses.  If the employer reimbursement is less than the deductible business expenses the employee incurred on behalf of his employer, deductibility of the excess business expenses by the employee is subject to the heightened substantiation requirements of section 274(d).  See sec. 1.274-5T(f)(2)(iii), Temporary Income Tax Regs, 50 Fed. Reg. 46028 (Nov. 6, 1985).

With respect to the business travel for which Flagship Airlines made reimbursements, petitioner has failed to substantiate that he incurred deductible business expenses in excess of the reimbursements.  Accordingly, petitioner is entitled to no deduction with respect to such travel.

_____

[22] The Form W-2 petitioner received from Flagship Airlines for taxable year 1991 listed $2,848 in Box 17 of the form and used the designation "Code L".  The "Code L" designation is used in Box 17 to report employee expense payments made under an accountable plan, where the payment is equal to "government specified rates", such as the per diem substantiation method. See 1991 Instructions for Forms W-2 and W-2P.

In sum, petitioner is not entitled to deductions for meals and incidental expenses relating to his Nashville residency or employment.

### (iv) Nashville Automobile Expenses

Petitioner alleges that he purchased two "junk airport cars" for his transportation in Nashville and that he used them solely because he was conducting business in Nashville. He seeks to deduct $1,057 relating to the purchase and repair of these cars.

Petitioner has failed to prove that the automobiles he purchased in Nashville were used solely for business purposes. It stands to reason that they were not, given that petitioner's personal residence was in Nashville. Even if we were to assume, arguendo, that the automobiles were used for business purposes, petitioner's claim for deductions still must fail. Section 263 denies a deduction for the cost of acquisition of machinery and equipment and similar property having a substantial life beyond the taxable year. See sec. 1.263(a)-1(b) and (a)-2(a), Income Tax Regs. Moreover, automobiles are "listed property" under section 280F(d)(4), thereby requiring petitioner to meet the heightened substantiation requirements of section 274(d). Petitioner has failed to establish with any particularity the time and place of the use of the cars or the business purpose of each use. Petitioner thus fails to meet the substantiation requirements of section 274.

In conclusion, petitioner is not entitled to his claimed deductions for unagreed travel expenses.

14. Entertainment Expenses

Petitioner seeks to deduct as entertainment expenses $13 and $31, respectively, for two meals that he alleges were business related. Deductibility of these items is governed by section 274. See sec. 274(d)(2). Petitioner failed to offer direct evidence substantiating the amount, time, place, or date of these claimed entertainment expenditures. See sec. 1.274-5(c)(3), Income Tax Regs. Accordingly, petitioner is entitled to no deduction for his alleged entertainment expenses.

15. Alleged Interest Payments to Petitioner's Mother

Petitioner alleges that he borrowed money from his mother during the subject years to fund his aviation activities. He seeks to deduct three checks totaling $941 allegedly paid to his mother for interest on the alleged loan. He concedes that there is no documentary evidence of either the loan or his obligation to repay his mother.

Section 163(a) generally allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Indebtedness means an unconditional and legally enforceable obligation for the payment of money. See Autenreith v. Commissioner, 115 F.2d 856, 858 (3d Cir.), affg. 41 B.T.A. 319 (1940); Linder v. Commissioner, 68 T.C. 792, 796 (1977).

We review the economic realities of transactions between family members with heightened scrutiny. See Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970). "The presumption is that a transfer between closely related parties is a gift." Id. Petitioner has not overcome this presumption. Apart from petitioner's own self-serving testimony, there are no indicia of an underlying, legally enforceable indebtedness between petitioner and his mother. See Christensen v. Commissioner, 40 T.C. 563 (1963). Indeed, petitioner did not even show the amount of the loan. Furthermore, even if we were to assume arguendo that there was bona fide indebtedness between petitioner and his mother, he has failed to establish that any interest paid was properly allocable to a trade or business or met any of the other exceptions to the statutory rule disallowing deductions for personal interest. See sec. 163(h).

Petitioner is not entitled to the claimed deductions for alleged interest payments to his mother.

B. Civil Fraud Penalty

If any part of any underpayment of a tax required to be shown on a return is due to fraud, there is an addition to tax of 75 percent of the portion of the underpayment that is attributable to fraud. See sec. 6663(a).

Respondent must prove fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b). Fraud is the intentional wrongdoing of a taxpayer to evade tax believed to be

owing.  See <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 698 (1989).  A finding of fraud requires a showing that the taxpayer intended to evade tax known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See <u>Korecky v. Commissioner</u>, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63.

Fraud is never presumed but must be proved by clear and convincing evidence.  See <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699. Because direct proof of a taxpayer's intent is rarely available, however, fraudulent intent may be established by circumstantial evidence.  See <u>Spies v. United States</u>, 317 U.S. 492, 499 (1943); <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Korecky v. Commissioner</u>, <u>supra</u> at 1568; <u>Stephenson v. Commissioner</u>, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).  The taxpayer's entire course of conduct may be examined to establish the requisite intent. See <u>Stone v. Commissioner</u>, 56 T.C. 213, 224 (1971); <u>Otsuki v. Commissioner</u>, 53 T.C. 96, 105-106 (1969).

For the reasons described below, we conclude that respondent has established that petitioner had underpayments for each of the years in issue and that he had fraudulent intent with respect thereto.

Based on the stipulations regarding both petitioner's unreported income and the deductions allowed by respondent, and based on our holdings herein regarding petitioner's alleged

additional deductions, respondent offered clear and convincing evidence that there were underpayments for each year in issue. See House v. Commissioner, T.C. Memo. 2000-22.

The record is replete with evidence of petitioner's fraudulent intent. Over a 3-year period, petitioner consistently underreported large amounts of gross receipts and net income. A consistent pattern of underreporting large amounts of income is evidence of fraud. See Holland v. United States, 348 U.S. 121, 137 (1954); Merritt v. Commissioner, 301 F.2d 484 (5th Cir. 1962), affg. T.C. Memo. 1959-172.

Petitioner is a tax professional and a C.P.A. who prepares tax returns for a living and represents clients before the Internal Revenue Service. His experience and knowledge of the tax laws is circumstantial evidence that he was aware of his obligation to report his income and that in consistently underreporting his income, he did so with fraudulent intent. See Solomon v. Commissioner, 732 F.2d 1459, 1461-1462 (6th Cir. 1984), affg. T.C. Memo. 1982-603; Beaver v. Commissioner, 55 T.C. 85, 93 (1970). As previously discussed, his explanations of his unreported income were implausible and unconvincing. We view petitioner's lack of credibility as circumstantial evidence of his fraudulent intent.

Petitioner boasted to the undercover CID agents that he disguised personal expenses incurred on personal trips in his aircraft as business expenses. The use of a business to cloak

the personal nature of expenses is evidence of fraud. See Truesdell v. Commissioner, 89 T.C. 1280, 1302-1303 (1987); Benes v. Commissioner, 42 T.C. 358, 383 (1964), affd. 355 F.2d 929 (6th Cir. 1966).

Although it appears that the accounting records of Romer & Co. were adequate for petitioner to accurately determine and report his income therefrom, he chose not to. With respect to his aviation activities, petitioner failed to maintain adequate records of his income and expenses, and this failure is circumstantial evidence of fraud. See Bradford v. Commissioner, supra at 307-308; Clayton v. Commissioner, 102 T.C. 632, 647 (1994).

Finally, in 1996, petitioner pleaded guilty to one count of violating section 7203 for the willful failure to supply information on his 1991 Federal income tax return. In his plea agreement, petitioner admitted that "the civil fraud penalty and interest applies to whatever additional tax he is deemed to owe after pursuing remaining civil remedies for tax years 1989-1991." Petitioner's admission, even if assumed to be nonbinding, is at the least evidence that his underpayments for these years were due to fraud. See Williams v. Commissioner, T.C. Memo. 1994-560.

In sum, respondent has shown by clear and convincing evidence that petitioner underreported his income in the subject years with the fraudulent intent of evading taxes. Petitioner has failed to rebut the presumption that the entire underpayment

for each of the years in issue is due to fraud.  See sec. 6663(b).  Accordingly, petitioner is liable for the fraud penalty under section 6663 for each of the years in issue based upon the underpayments to be determined in the Rule 155 computations.

C.    Statute of Limitations

Petitioner filed his Federal income tax return for taxable year 1989 on April 15, 1990.  Respondent mailed the notice of deficiency on April 10, 1997.  With little elaboration, petitioner alleges on brief that the period of limitations has run for taxable year 1989.

Generally the amount of any tax must be assessed within 3 years after a return is filed.  See sec. 6501(a).  If the Commissioner proves that the taxpayer's return was false or fraudulent with the intent to evade tax, however, tax may be assessed "at any time".  Sec. 6501(c)(1).  We have held that respondent proved by clear and convincing evidence that petitioner's tax returns for the years 1989 through 1991 were filed with the fraudulent intent to evade taxes.  Accordingly, respondent is not time barred from assessing tax liability against petitioner for any of the subject years.

We have considered all other arguments advanced by petitioner for a contrary result and find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be

entered under Rule 155.